## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

| | | |
|---|---|---|
| ARTHUR ORKIN, AND WAYNE ORKIN | : | Civil Action No: 4:21-CV-40060-TSH |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| LISA SUE ALBERT, AND IAN ALBERT | : | |
| Defendants. | : | |

---

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

Jason E. Tauches (BBO#569448)
jason@andrewcowanlaw.com
PiltserCowan Law LLC
25 Bay State Rd, 2nd Fl
Boston, MA 02215
Telephone: (617) 245-1976
Facsimile: (617) 245-1976

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................ii

TABLE OF AUTHORITIES ..........................................................................................................iii

I.     Introduction ........................................................................................................................ 1

II.    Factual Background ........................................................................................................... 1

III.   Legal Argument ................................................................................................................. 4

   A.  The Orkins Have a Likelihood of Success on the Merits of their Principal Claims ..... 5

      1.  Interference with Advantageous Business Relationships ......................................... 5

      2.  Unjust Enrichment. ................................................................................................... 7

      3.  Defamation ................................................................................................................ 8

   B.  The Orkins Will Suffer Irreparable Harm if the Relief is not Granted. ......................... 9

   C.  The Harm to the Plaintiffs if the Injunction is not Granted Outweighs the Harm to the Defendants if the Injunction is Granted ............................................................................. 11

   D.  Granting the Injunction Will Not Adversely Affect the Public Interest ..................... 12

IV.    Conclusion ....................................................................................................................... 12

## **TABLE OF AUTHORITIES**

Cases

Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168 (1st Cir. 2015) ................................................................................................................................... 5

Cohen v. Brown Univ., 991 F.2d 888 (1st Cir. 1993) ........................................................... 11

Conway v. Smerling, 37 Mass.App.Ct. 1 (1994) ..................................................................... 6

Disend v. Meadowbrook Sch., 33 Mass.App.Ct. 674 (1992) .................................................. 8

ELM Medical Laboratory, Inc. v. RKO General, Inc., 403 Mass. 779 (1989) ....................... 5

ER Holdings, Inc. v. Norton Co., 735 F. Supp. 1094 (D.Mass. 1990) ................................. 12

F Cultural Travel BV v. Explorica, Inc., 274 F.3d 577 (1st Cir. 2001) .................................. 4

Gately v. Commonwealth of Mass., 2 F.3d 1221 (1st Cir. 1993) ............................................ 9

Latin Am. Music Co. v. Cardenas Fernandez & Assoc., 2 Fed. Appx. 40 (1st Cir. 2001) ..... 4

Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47 (1st Cir.), decision clarified on denial of reh'g, 559 F.3d 1 (1st Cir. 2009) ........................................ 7

Massachusetts Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26 (1st Cir. 2006). ................................................................................................................................... 8

Noonan v. Staples, Inc., 707 F. Supp. 2d 85 (D.Mass. 2010) ................................................. 8

Ravnikar v. Bogojavlensky, 438 Mass. 627 (2003) ................................................................ 8

Riseman v. Orion Research Incorp., 394 Mass. 311 (1985) ................................................... 6

Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12 (1st Cir. 1996) ................... 4, 9

Russomano v. Novo Nordisk Inc., 960 F.3d 48 (1st Cir. 2020) .............................................. 4

Salamon v. Terra, 394 Mass. 857 (1985) ............................................................................... 7

Schinkel v. Maxi-Holding, Inc., 30 Mass.App.Ct. 41 rev. denied, 409 Mass. 1104 (1991) ... 5

Sindicato Puertorriqueño de Trajabadores v. Fortuño, 699 F.3d 1 (1st Cir. 2012) ................. 4

Smith v. Aroostook Cty., 922 F.3d 41 (1st Cir. 2019) .......................................................... 12

Stanton v. Metro Corp., 438 F.3d 119 (1st Cir. 2006) ............................................................ 8

Stevens v. Thacker, 550 F.Supp.2d 161 (D.Mass. 2008) ........................................................ 7

Trump v. Int'l Refugee Assistance Project, 137 S. Ct. 2080 (2017) ...................................... 11

United Truck Leasing Corp. v. Geltman, 406 Mass. 811 (1990) ............................................. 5

University of Tex. v. Camenisch, 451 U.S. 390 (1981) ......................................................... 11

Weinberger v. Romero–Barcelo, 456 U.S. 305 (1982) ............................................................ 9

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008) ............................... 11

Rules

Fed. R. Civ. P. 65 ..................................................................................................................... 1

Treatises

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 (3d ed. 2013)
    ............................................................................................................................................ 11

I.  **Introduction**

The plaintiffs, Arthur Orkin ("Arthur") and Wayne Orkin ("Wayne") (collectively, the"Orkins,") submit this Memorandum of Law in support of their Motion for an Order pursuant to Fed. R. Civ. P. 65 to enjoin the Defendants, Lisa Sue Albert ("Lisa") and Ian Albert ("Ian") from removing any funds from Boost Web SEO ("Boost Web"), OBANC or IA Payments' (collectively, the "Companies") accounts at Wells Fargo Bank; directly or indirectly contacting any client, contractor or vendor of the Companies; directly or indirectly contacting any of Arthur Orkin's medical providers; and to Order that the defendants release to Wayne Orkin all email and text communications they have made to clients, contractors and vendors of the Companies, any and all tax returns that they submitted to the Internal Revenue Service concerning the Companies, to include employees, officers and contractors of the Companies; that the defendants reinstate Wayne Orkin as an authorized signer on the Companies' accounts at Wells Fargo Bank; and that the defendants rescind their statements to the Food and Drug Administration and the Massachusetts Department of Elder Affairs.

II.  **Factual Background**

A full statement of the underlying facts is contained in the Plaintiffs' Verified Complaint ("Comp.") and the Affidavit of Wayne Orkin ("Orkin Aff."), which is filed herewith and incorporated herein and thus will not be fully repeated here. Wayne Orkin is the founder and an officer of the Companies. See Comp. at ¶¶ 10-15; Orkin Aff. at ¶¶ 2-5. He is the primary face of the Companies and all revenue that is generated for the Companies is based upon his goodwill with clients. See Comp. at ¶¶ 26-30; Orkin Aff. at ¶¶ 7, 8, 15, 20-27. Wayne allowed the defendants to become officers of the Companies so that they could have an income stream from the Companies in case Wayne suddenly was not able to

1

work and provide funds to them. See Orkin Aff. at ¶¶ 13, 23. Wayne was in the Dominican Republic when Boost Web was formed and directed Lisa to register Boost Web as a company and create the Boost Web Wells Fargo Bank Account ("Boost Web Account"). Id. at ¶ 12 As such, the defendants are named on the Companies' bank accounts at Wells Fargo, and Wayne is an authorized signer. Id. at ¶¶ 12, 18. The defendants' work for the Companies is restricted to accounting work directed by and supervised by Wayne. Id. at ¶¶ 6-8, 14-17. Wayne holds himself out as and conducts business as the president of the Companies with the knowledge of the defendants, and the defendants never disputed his role as an officer and the founder of the Companies until February 2021. Id. at ¶¶ 21-23, Exs. A, B.

In early April, Lisa removed Wayne as an authorized signer on the Boost Web Wells Fargo Account that holds approximately $55,000 of Boost Web Funds. Id. at ¶ 32. This account is also where the clients of Boost Web deposit their payments to Boost Web. Id. at ¶ 27. Wayne cannot access the account and cannot pay for services and company expenses based on Lisa's actions. See Comp. at ¶ 53; Orkin Aff. at ¶¶ 28-36. For example, Wayne's payment of expenses from his Capital One Credit Card from the Boost Web Wells Fargo account was denied because the payment was unauthorized. See Orkin Aff. at ¶ 31, Ex. C. All payments to his credit card are now subject to a 21 day hold. Id. Wayne also cannot access the account that holds the funds for OBANC and IA Payments, preventing him from paying services and company expenses. Id. at ¶¶ 33-36.

Upon information and belief, Lisa and Ian are publishing to third parties false statements that Wayne is not an officer or affiliate of the Companies. See Comp. at ¶¶ 54-55; Orkin Aff. at ¶¶ 38-43. Lisa and Ian have also failed to provide Wayne with any communications between themselves and the Companies' clients; and they have failed to

provide Wayne with the taxes filed for the Companies. See Comp. at ¶ 58; Orkin Aff. at ¶¶ 64-67.

On May 25, 2021, Card Connect, a major client of Boost Web was supposed to deposit $35,000 to $50,000 into the Boost Web Wells Fargo Account that only Lisa and Ian have control over. See Orkin Aff. at ¶¶ 27, 28, 41. However, through Wayne's authority as President of Boost Web and through his relationship with Card Connect as the President of Boost Web, Wayne authorized a change to the account in which Card Connect will deposit the funds. Id. at ¶ 41. Upon seeing that no funds have been deposited into the account, there is a likelihood that Lisa and Ian will contact Card Connect and interfere with Wayne's relationship with Card Connect by falsely stating that Wayne is not an officer or affiliate of Boost Web. Id. at ¶ 42. In order to maintain the status quo and for fear that Lisa and Ian will contact clients to interfere with Wayne's relationship with the clients by stating that Wayne is not an officer or affiliate of the Companies, Wayne has not contacted the other clients of the Companies to change their deposit accounts to an account other than the Wells Fargo accounts. Id. at ¶ 43.

Lisa has also defamed Arthur by making false statements about his health and cleanliness to medical providers, and defamed Wayne by stating that he is committing elder abuse against Arthur. See Comp. at ¶¶ 46-51; Orkin Aff. at ¶¶ 44-62, Ex. D. On information and belief, Lisa has falsely reported to the Food and Drug Administration that she became sick from a CBD product produced by Erva Herb, a company with which Wayne has an interest. See Orkin Aff. at ¶¶ 68-72, Ex. E. Based on her false accusations, Wayne is at risk of losing his business relationship and prospective business relationship with Erva Herb. Id. at ¶¶ 72-77.

Lastly, Lisa has continued to defame Wayne and falsely reported to his credit card

3

company that he fraudulently took out a card in her name. Id. at ¶¶ 66-67. This caused the credit card company to cancel his credit card. Id. As recently as Friday, July 16, Ian falsely stated in a deposition that Wayne Orkin is not an officer or affiliate of the Companies and that he merely does contract work for them. Id. at ¶¶ 39-40. The publication of this statement and statements like them, and the actions of the defendants above has caused and continues to cause Wayne Orkin and Arthur Orkin irreparable harm as they are aimed at Arthur's health, Wayne's businesses and Wayne's reputation in the community. See Comp. at ¶¶ 59-99; Orkin Aff. at ¶¶ 74.

### III.   Legal Argument

Four factors typically govern the grant of a preliminary injunction:

> [1] the movant's likelihood of success on the merits; [2] whether and to what extent the movant will suffer irreparable harm in the absence of injunctive relief; [3] the balance of relative hardships, that is, the hardship to the nonmovant if enjoined as opposed to the hardship to the movant if no injunction issues; and [4] the effect, if any, that an injunction or the lack of one may have on the public interest.

Russomano v. Novo Nordisk Inc., 960 F.3d 48, 52 (1st Cir. 2020); F Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 581 (1st Cir. 2001); Latin Am. Music Co. v. Cardenas Fernandez & Assoc., 2 Fed. Appx. 40, 42 n.2 (1st Cir. 2001). Here, all four factors favor Wayne and Arthur. While likelihood of success is the touchstone of the preliminary-injunction inquiry, the Court "need not predict the eventual outcome on the merits with absolute assurance." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996). It need only find that there is a strong likelihood that the Orkins will ultimately prevail. Sindicato Puertorriqueño de Trajabadores v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012). The Orkins have carried that burden here. Therefore, the Court should grant the preliminary injunction.

A.  <u>The Orkins Have a Likelihood of Success on the Merits of their Principal Claims</u>

In the First Circuit, "proving likelihood of success on the merits is the 'sine qua non' of a preliminary injunction." <u>Arborjet, Inc.</u> v. <u>Rainbow Treecare Sci. Advancements, Inc.</u>, 794 F.3d 168, 173 (1st Cir. 2015). The facts as they are currently known to Wayne and Arthur strongly establish the likelihood that they will prevail in establishing their asserted causes of action.

1.    <u>Interference with Advantageous Business Relationships</u>

The plaintiffs will prevail in their claim against defendants for intentional interference with an advantageous business relationship. A claim of intentional interference with advantageous business relations requires proof of four elements: (1) the existence of a business relationship or contemplated contract of economic benefit; (2) defendant's knowledge of such relationship; (3) the defendant's intentional and improper interference with that relationship; and (4) the plaintiff's loss of advantage as a direct result of the defendant's conduct. See <u>United Truck Leasing Corp.</u> v. <u>Geltman</u>, 406 Mass. 811, 814-16 (1990), modifying <u>ELM Medical Laboratory, Inc.</u> v. <u>RKO General, Inc.</u>, 403 Mass. 779 (1989) (requiring malice).

Interference itself is not enough to support liability unless the interference is "wrongful by some measure." <u>Schinkel</u> v. <u>Maxi-Holding, Inc.</u>, 30 Mass.App.Ct. 41, 50-1, rev. denied, 409 Mass. 1104 (1991). In defining improper interference, the Supreme Judicial Court opined that:

> [the] [d]efendant's liability may arise from improper motives or from the use of improper means. No question of privilege arises unless the interference would be wrongful but for the privilege; it becomes an issue only if the acts charged would be tortious on the part of an unprivileged defendant.

<u>United Truck Leasing Corp.</u>, 406 Mass. at 816, accord <u>Schinkel</u>, 30 Mass. App.Ct. at 51.

5

Thus, it is essential that the defendants acted without lawful cause. Conway v. Smerling, 37 Mass.App.Ct. 1, 7 (1994); see also Riseman v. Orion Research Incorp., 394 Mass. 311, 314 (1985) ("A claim for interference with an advantageous business relationship involves one who, without privilege to do so, intentionally induces or causes a third person not to enter into or continue a business relationship with another.").

In the case at bar, the defendants, did the following without any legal authority to do so and for the purpose of harming Wayne: (1) made false and defamatory accusations against Wayne Orkin to one or more of the Companies' clients; (2) instructed the Companies' clients that Wayne was not an officer or affiliate of the Companies, essentially saying that the clients could no longer go through Wayne, but instead would need to deal directly with the defendants; (3) removed Wayne as an authorized signer on the Companies' Wells Fargo bank accounts, making it impossible for Wayne to be reimbursed for business expenses and to pay contractors and vendors of the Companies; (4) made a false accusation to Wayne's credit card company that he had fraudulently requested a card to be issued to Lisa which caused the credit card company to cancel his credit card and sever their relationship with him; and (5) falsely reported to the Food and Drug Administration that a product Wayne has an interest in caused Lisa to become sick, which caused the FDA to open an investigation into the product and threatens Wayne's relationship with the company. See Orkin Aff. at ¶¶ 29-36, 39-40, 66-74, Exs. D, E.

Wayne has recently been forced to contact Card Connect, a main client of Boost Web SEO, in order to change the account from the Wells Fargo Account in which Card Connect deposits the $35,000 to $50,000 a month it provides to Boost Web, and of which Wayne has no access, just so that Wayne may ensure Boost Web may continue to operate its business. Id. at ¶¶ 41-53. However, there is a substantial likelihood that this action will

6

cause the defendants to contact Card Connect and state that Wayne is not an officer or affiliate of Boost Web, irreparably damaging Wayne's goodwill with Card Connect and the relationship Wayne and Boost Web have with Card Connect. Id.

But for the defendants' actions, Wayne's multi-year relationships with the Companies' clients would not have been disturbed, and his businesses would not be threatened. But for the defendants' actions, Wayne's multi-year relationships with his credit card company would not have been disturbed, and his business with them would not have been terminated. But for the defendants' actions, Wayne's relationship with Erva Herb would not have been disturbed, and his business with them would not be threatened. The defendants have taken the above-described actions to deliberately and maliciously cause hardship to Wayne, to misappropriate the Companies' funds and convert them for their own use, to destroy the Companies, and to take away Wayne's livelihood.

Thus, Wayne is likely to succeed on the merits of his Tortious Interference claim.

### 2.   Unjust Enrichment.

The plaintiffs also have a strong likelihood of success on the merits for their unjust enrichment claim. A claim for unjust enrichment in Massachusetts requires: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir.), decision clarified on denial of reh'g, 559 F.3d 1 (1st Cir. 2009) citing Stevens v. Thacker, 550 F.Supp.2d 161, 165 (D.Mass. 2008). Massachusetts courts emphasize the primacy of equitable concerns, such as equity and morality, in a finding of unjust enrichment or quasi-contract. Id. citing Salamon v. Terra, 394 Mass. 857 (1985).

Here, the Companies' accounts have approximately $55,000 in funds that were placed there directly through the efforts of Wayne. See Orkin Aff. at ¶¶ 25-28, 32. Defendants unlawfully took control over the Companies' accounts and denied Wayne access to them. See Comp. at ¶¶ 53-58; Orkin Aff. at ¶ 30. The defendants have breached their fiduciary duty to Wayne and the Companies and enriched themselves of all funds in those accounts and all funds that will flow into the accounts from clients as revenue, to the obvious disadvantage of Wayne Orkin. Therefore, plaintiffs will succeed on their unjust enrichment claim.

### 3. Defamation

The plaintiffs also have a strong likelihood of success on the merits for their defamation claims. To prove defamation in Massachusetts, a claimant needs to prove that: (1) the defendant published an oral (slander) or written (libel) statement; (2) the statement was about, and concerned, the plaintiff; (3) the statement was defamatory; (4) the statement was false; and (5) the plaintiff suffered economic loss, or the claim is actionable without proof of economic loss. Noonan v. Staples, Inc., 707 F. Supp. 2d 85, 89 (D.Mass. 2010) (citing Stanton v. Metro Corp., 438 F.3d 119, 124 (1st Cir. 2006)); Massachusetts Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 42 (1st Cir. 2006). Proof of economic loss is not required where the statements allege that the plaintiff has committed a crime, has certain social diseases, or if they are statements that may prejudice the plaintiff's profession or business. Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003). A statement will be considered "defamatory" if it "may reasonably be [understood] as discrediting [the plaintiff] in the minds of any considerable and respectable class of the community." Disend v. Meadowbrook Sch., 33 Mass.App.Ct. 674, 675 (1992).

Here there can be no doubt that the plaintiffs will prevail on the merits of their

defamation claims. Defendant Lisa Albert made false statements of fact to a credit card company stating that Wayne Orkin fraudulently had a credit card issued in her name. See Orkin Aff. at ¶¶ 66-70. She also complained to the Massachusetts Department of Elder Affairs in a phone call and to Arthur Orkin's healthcare providers in a letter that Wayne was abusing Arthur. Id. at ¶¶ 55-62, Ex. D. Lastly, she made several false statements to Arthur's healthcare providers that he had medical issues that did not exist. Id. Ian made false statements of fact during a deposition in which Wayne is a party, in which he stated that Wayne does not own the Companies and is only an independent contractor. Id. at ¶¶ 39-40. Defendants knew that these statements about Wayne and Arthur were false, and they published them intentionally in order to harm the plaintiffs' reputations in the community, prejudice Wayne's profession and business, and to cause economic damage. Therefore, plaintiffs will prevail on their defamation claims.

B.  The Orkins Will Suffer Irreparable Harm if the Relief is not Granted.

The plaintiffs will suffer irreparable harm if an injunction is not granted. To establish irreparable harm, it is usually enough if the plaintiff shows that its legal remedies are inadequate. Ross-Simons of Warwick, 102 F.3d at 18–19 citing Weinberger v. Romero–Barcelo, 456 U.S. 305, 312 (1982) "If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel...[and] a cognizable threat of such harm can support a restraining order." Ross-Simons of Warwick, 102 F.3d at 18–19. Irreparable harm is weighed on a sliding scale with likelihood of success on the merits, such that the greater "the likelihood of merits success, the less that is required in the way of irreparable harm." Id. citing Gately v. Commonwealth of Mass., 2 F.3d 1221, 1232 (1st Cir. 1993) Irreparable harm can be found

9

in the loss of goodwill. Id.

As set forth in the Declaration of Wayne Orkin, Wayne built the Companies and the Companies' relationships with clients. See Orkin Declaration at ¶¶ 2-25. The Companies' goodwill is based on Wayne's goodwill with the Companies' clients. Id. Wayne cannot simply rebuild the goodwill with clients that it took him eleven years to develop if the defendants communicate to them that Wayne is not affiliated or an officer of the Companies. Any such statements by defendants will cause clients to distrust the ability of the Companies to render the services they have developed since their founding. Nor will money damages adequately compensate the plaintiff. Without the intervention of the court, the defendants will continue to destroy the Companies until nothing is left. This represents an incalculable loss of revenue to the plaintiff for however many additional years the plaintiff intended to remain in business, which, according to Wayne, would be for at least another two decades.

There is also the issue of the defendants' interfering with the day-to-day business operations, controlling funds necessary for Wayne to run the businesses, and communicating with third party vendors and consultants concerning the Companies. Id. at ¶¶ 29-36. Without an order from this Court, Wayne will have lost not only its entire book of business, but also the goodwill that it has developed over the last eleven years, a reputation that would attach to him even if he were able to attempt to start afresh.

Further, without an order from the Court requiring the defendants to rescind their statements to the FDA and to the Massachusetts Department Investigators, Wayne is at risk of losing goodwill with Erva Herb and faces a continued investigation, that will cause him continued stress and anxiety, especially with the threat of possible criminal charges, all due to false allegations. Id. at ¶¶ 58-62, 68-74. The loss of goodwill with Erva Herb and the

continued investigation are both non-compensable harms. Lastly, the defendants' communications with medical staff concerning Arthur Orkin have damaged his reputation, interfered with his medical care, and threatens his future medical care. Under these circumstances, money damages can hardly compensate the plaintiffs.

Therefore, plaintiffs have shown that they will suffer irreparable harm if the preliminary injunction is not granted.

### C. The Harm to the Plaintiffs if the Injunction is not Granted Outweighs the Harm to the Defendants if the Injunction is Granted

"Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." Trump v. Int'l Refugee Assistance Project, 137 S. Ct. 2080, 2087 (2017) citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008); 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 (3d ed. 2013). The purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward. Id. citing University of Tex. v. Camenisch, 451 U.S. 390, 395 (1981).  If the harm that would occur to the movant if the injunction were not granted is greater than the harm to the opposing party if the injunction is granted, the court should issue the injunction. Cohen v. Brown Univ., 991 F.2d 888, 905 (1st Cir. 1993).

Here the harm to the plaintiffs if the injunction is not granted greatly outweighs the harm, if any to the defendants if the injunction is granted. The plaintiffs are likely to lose their business, their reputation and their health if the defendants are not enjoined. The defendants, however, lose nothing if the injunction is granted. They will still be able to take part in the Companies and take the proceeds from the Companies that are due to them under

their contracts.

Thus, the balance of harms favors the plaintiffs, and the injunction should be granted.

### D.  Granting the Injunction Will Not Adversely Affect the Public Interest

Allowing the defendants to eviscerate their contract with Wayne and to continue to defame Arthur and Wayne would offend public policy. Upholding the well-being of its citizens and upholding contract rights are all in the public interest. See Smith v. Aroostook Cty., 922 F.3d 41, 42 (1st Cir. 2019); ER Holdings, Inc. v. Norton Co., 735 F. Supp. 1094, 1103 (D.Mass. 1990). "The public can have no legitimate interest in the abrogation of contract rights." ER Holdings, 735 F. Supp. at 1103 (Where defendant shareholder sued for preliminary injunction requiring plaintiff corporation tohold annual shareholder meeting, the court found that the public interest could not be adversely affected by requiring the Plaintiff to uphold the contractual obligation to hold such meeting).

Here, ensuring that the defendants honor their contract with Wayne and do not cause harm to Arthur's health will not adversely affect the public interest. Thus, the injunction should be granted.

### IV.   Conclusion

WHEREFORE, plaintiffs Arthur Orkin and Wayne Orkin, respectfully request that this Court grant the requested injunctive relief, and that it enter such further relief as is equitable and just. A proposed Order is submitted herewith.

Respectfully submitted,
WAYNE ORKIN AND ARTHUR ORKIN,
By their Attorney:

        /s/Jason E. Tauches
Jason E. Tauches (BBO#569448)
jason@andrewcowanlaw.com
PiltserCowan Law LLC
25 Bay State Rd, 2nd Fl
Boston, MA 02215
Telephone: (617) 245-1976
Facsimile: (617) 245-1976

Dated July 22, 2021