UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>WAYNE AND ARTHUR ORKIN, )<br>      Plaintiffs, )<br>)<br>v. )<br>)<br>LISA SUE ALBERT AND IAN ALBERT, )<br>      Defendants. )<br>)<br>_____ )<br>)<br>BOOST WEB SEO, INC., )<br>      Intervenor. )<br>)<br>)<br>_____ ) | CIVIL ACTION<br>NO. 4:20-cv-40116-TSH |

**Order on Plaintiffs' Motion for a Temporary Restraining Order (Docket No. 7); Boost Web SEO, Inc.'s Motion to Intervene and Motion for Constructive Trust (Docket No. 10); and Defendants' Motion for Expedited Discovery (Docket Nos. 64, 66)**

**August 20, 2021**

**HILLMAN, D.J.,**

Before the Court is Plaintiffs' Motion for a Temporary Restraining Order (Docket No. 7); Boost Web SEO, Inc.'s Motion to Intervene (Docket No. 10), and Defendants' Cross Moton for Expedited Discovery (Docket Nos. 64, 66).

**Factual and Procedural Background**

Wayne Orkin and Arthur Orkin ("Plaintiffs") brought this action against Lisa Albert and Ian Albert ("Defendants"), Arthur's sister and nephew, to dispute control of three family-

operated businesses: Boost Web (a Florida corporation), OBANC (a Delaware corporation), and IA Payments (a Delaware corporation) (collectively, the "Companies"). Plaintiffs have also alleged various defamation claims against Lisa and/or Ian concerning their statements about Wayne's treatment of Arthur, Arthur's health and hygiene, and Wayne's affiliation and position at the Companies. The claims alleged include: defamation (Count I: Wayne v. Lisa); defamation (Count II: Wayne v. Lisa and Ian); defamation (Count III: Arthur v. Lisa); breach of fiduciary duty (Count IV: Wayne v. Lisa); breach of fiduciary duty (Count V: Wayne v. Ian); breach of contract (Count VI: Wayne v. Lisa); breach of contract (Count VII: Wayne v. Ian); unjust enrichment (Count VIII: Wayne v. Lisa and Ian); injunctive relief (Count IX); and intentional interference with advantageous business relationships (Count X: Wayne v. Lisa).

## Discussion

### I.     Motion for TRO

"[Injunctive relief] is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Federal Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012). The standard for issuing a TRO is "the same as for a preliminary injunction." *Bourgoin v. Sebelius*, 928 F.Supp.2d 258, 267 (D. Me. 2013). To obtain relief, the moving party must satisfy the following four factors: (i) the likelihood that the movant will succeed on the merits; (ii) the possibility that, without an injunction, the movant will suffer irreparable harm; (iii) the balance of relevant hardships between the parties favors relief; and (iv) the effect of the court's ruling on the public interest. *Coquico, Inc. v. Rodríguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009).

It would be utterly irresponsible for this Court to issue such extraordinary relief because Plaintiffs have presented little or no substantial evidence for any of their claims, and therefore have no likelihood of success on the merits.

A. *Defamation (Counts I, II, III)*

Under Massachusetts law, to prevail on a claim for defamation the plaintiff must establish that: (1) the defendant published an oral (slander) or written (libel) statement; (2) the statement was about, and concerned, the plaintiff; (3) the statement was defamatory; (4) the statement was false; and (5) the plaintiff suffered economic loss, or the claim is actionable without proof of economic loss. *Noonan v. Staples, Inc.*, 707 F. Supp. 2d 85, 89 (D. Mass. 2010). In Massachusetts, truth is justification for libel unless actual malice is proved. M.G.L. c. 231 § 92.

Plaintiffs have not established a likelihood of success on any of their three defamation claims.

Wayne is the primary caretaker for Arthur, the siblings' nonagenarian father. Count I (Wayne v. Lisa) alleges that Lisa mailed or made defamatory statements over the phone regarding Wayne's treatment of Arthur to Arthur's medical providers and the Massachusetts Department of Elder Affairs. (Compl. ¶¶ 59-60; Ex. D, Docket No. 7-2). Lisa admits she sent a letter to Arthur's physician, but that all the claims in her letter about Wayne's negligence or abuse are true. (Docket No. 4, ¶ 46; Docket No. 15 at 2). Wayne, who bears the burden of proof on a TRO, has adduced no evidence beyond conclusory allegations that Lisa's claims are false or that they are made with actual malice. There are no medical records or evidence about Arthur's condition to rebut any of the letter's detailed claims about Arthur's repeated hospitalizations for falls, lack of home care, and recent drastic legal and financial decisions.

Count III (Arthur v. Lisa) makes similar allegations as Count I. Again, Arthur has provided no evidence to show that Lisa's claims were false or made "with reckless disregard for the truth" or knowledge of their falsity, let alone actual malice. The only evidence offered is a copy Lisa's letter to Wayne's urologist and Wayne's statement in his affidavit that the letter caused their father intense emotional distress. (Orkin Aff. ¶ 59, Docket No. 7).

Count II (Wayne v. Lisa and Ian) alleges that Ian and Lisa made a number of false statements to the Companies' clients that Wayne was not affiliated with the Companies and is not an officer of the Companies. But the Complaint does not state when such statements were made, nor does it identify their recipients. The only detail provided is that "[o]n information and belief, Lisa and Ian have communicated to client of the Companies, to include Card Connect, that Wayne is no longer associated with the Companies." (Comp. ¶ 55). Wayne does not explain the basis for his belief and information, and without that critical evidence he has not established a likelihood of success on the merits, *assuming arguendo* that any statement by Lisa or Ian about his non-affiliation with the Companies is false.

Furthermore, Wayne's evidence that he is the President and a corporate officer at the Companies pales in comparison to Defendants' evidence that he merely provided "sales and administrative support." Whereas Wayne has attached copies of his LinkedIn profile showing his title as Co-Founder (not President) of all three companies, and copies of one email in his email signature held him out as Boost's President, Boost has submitted Boost's Florida 2020 and 2021 corporate annual report and its incorporation documents, which list Lisa as the sole corporate officer and President. (*Compare* Exs. A, B, Docket No. 7-2 *with* Exs. A-C, Docket No. 10). While the Court can question why Boost and Defendants allowed Wayne to hold himself out as the President on Gmail and as a co-founder on social media, if, as they say, he

merely provided "sales and administrative support," suspicion does not connote a likelihood of success on the merits. (¶ 6, Docket No. 10).

On a final note, Plaintiffs have asked the Court to order Lisa to rescind a complaint about Erva Herb Delta 8 Chocolates, a company he has invested in, that she submitted to the Food and Drug Administration. (Docket No. 7 at 2; 7-1 at 10; Ex. E, Docket No. 7-2). Wayne did not state any allegations about Lisa's defamatory remarks to the FDA about Erva Herb in the Complaint, *see generally* Docket No. 1, and he cannot spontaneously add a new defamation cause of action in his motion for a TRO.

B.  *Breach of Contract (Count VI, VII)*

"To prevail on a claim for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016). Plaintiff Wayne Orkin has no likelihood of prevailing on his breach of contract claims against Lisa and Ian (Counts VI, Count VII) where he has not provided an iota of evidence that valid contracts exist.

Counts VI states a claim against Lisa for violating a purported agreement with Wayne to allow Wayne to manage Boost and its day-to-day operations while she would be limited to the accounting, with the understanding that no decision concerning Boost would be made without Wayne's consent because they would both be corporate officers. (Compl. ¶ 17). Wayne further claims as part of that agreement, Lisa would be named on the Boost Wells Fargo Checking Account and Wayne would remain an authorized signer in order to pay for client services, contract services, and other business expenses, such as her business phone. (¶¶ 18-19). Count

VII alleges that Ian made the same agreement with Wayne as to OBANC and IA Payments. (¶¶ 21-26). Both counts charge that Ian and Lisa broke their respective agreements when Lisa stopped payments on checks and payments made by Wayne from the Boost account and removed Arthur as an authorized user, and when they diverted money from the Companies for their own personal use.

No written contracts were attached to the Complaint, but Wayne clarified in his TRO motion that his agreements with Lisa and Ian were verbal. (Orkin Aff. ¶¶ 6, 14). For Wayne to show likelihood of success on the merits on a breach of contract claim, he must at a minimum show that an enforceable contract *exists*. Florida, Massachusetts, and Delaware—the various states where Boost, IA Payments, and OBANC were incorporated, where their registered officer (Lisa Albert) resides, or where one or more parties may have possibly resided when the purported verbal agreement was struck based on the facts provided in the Complaint—all ban oral contracts that extend beyond one year. *See* M.G.L. c. 259, § 1; 6 Del. C §2714(a); West's F.S.A. § 725.01. Per Wayne's allegations in the Complaint, his agreements with Lisa and Ian were made when the Companies were founded in 2018, 2019, and 2010, and had no expiration date, and therefore could not be completed within one year's time.

C. *Breach of Fiduciary Duty (Counts IV, V)*

To succeed on a breach of fiduciary duty claim, a plaintiff must show: "(1) the existence of a fiduciary duty; (2) breach of that duty; (3) damages; and (4) a causal connection between breach of the duty and the damages." *Baker v. Wilmer Cutler Pickering Hale and Dorr*, *LLP*, 91 Mass.App.Ct. 835, 842 (Mass. App. Ct. 2017).

In Counts IV (Wayne v. Lisa) and V (Wayne v. Ian), Wayne restates his grievances from the breach of contract claims and argues that, as a shareholder and officer of each of the

Companies, Lisa and Ian owe him a fiduciary duty that they each violated by withholding or stopping payments due to him for legitimate business expenses from the OBANC and Boost Wells Fargo accounts, diverting company funds for their personal uses, making statements to third parties, including Company clients, that he has no affiliation with and was not an officer of the Companies, and failing to include him in tax preparation and filing.  First, Wayne has not established that a fiduciary duty exists.  Even if he had, almost all the multiple breaches he alleges are not supported by any evidence, such as proof of statements to third parties, any information about the Companies' tax filings or preparation, or any details about the supposed funds Ian and Lisa have diverted.  Even where there is some evidence that an alleged act took place, such as Wayne's submission that a payment request to his personal credit card from the Boost account had been blocked on April 27, 2021—there is no background justifying the payment as a legitimate expense to which Wayne was entitled beyond the bare allegations of the Complaint.

    D.  *Intentional Interference with Contractual Relations (Counts X, XI)*

        A claim of intentional interference with advantageous business relations requires proof of four elements: (1) the existence of a business relationship or contemplated contract of economic benefit; (2) defendant's knowledge of such relationship; (3) the defendant's intentional and improper interference with that relationship; and (4) the plaintiff's loss of advantage as a direct result of the defendant's conduct. *See United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 814-16 (1990), modifying *ELM Medical Laboratory, Inc. v. RKO General, Inc.*, 403 Mass. 779 (1989) (requiring malice).

    Count X alleges that Lisa interfered with Wayne's relationship with Wells Fargo Bank when she removed him as an authorized signer on the Boost Wells Fargo account, while Count XI

alleges that Lisa interfered with Wayne's relationship with Card Connect, Boost's largest client, when she told Card Connect that Wayne was not a Boost officer.  As to Count XI, Wayne has not provided any evidence to establish that Lisa's communication was improper because he was an officer of Boost.  As to Count X, since Wayne has not established the existence of an agreement with Lisa that entitles him to remain an authorized signer on the Boost Wells Fargo Account, there is no evidence that Lisa's decision to block his access to that account was improper.  Furthermore, it is not clear that a contract of economic benefit exists between a bank and an authorized signer selected by the accountholder—absent the accountholder's consent, the bank would have no authority to allow the authorized signer to access the accountholder's funds.

There is no need to consider the remaining three TRO factors because "if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Maine Educ. Ass'n Benefits Trust v. Cioppa*, 695 F.3d 145, 152 (1st Cir. 2012) (quoting *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir.2002) ).  Plaintiffs' motion for a TRO is *denied*.

## II. Motion to Intervene

In addition to granting its Fed. R. Civ. P 24 request to intervene, Boost asks the Court to: 1) impose a constructive trust over the funds Wayne diverted to another account; 2) order Wayne to provide Boost with an accounting for all funds received to the Orkin Account and all disbursements from that account; 3) provide Boost with the credentials to access the Card Connect Co-Pilot Web Portal and Boost's QuickBooks account.  (Docket No. 10).  The Court declines to impose a constructive trust or issue injunctive relief on such a thin record, but will grant Boost's motion to intervene and file its intervenor complaint to join its conversion and unjust enrichment claims against Wayne.

A. *Motion to Intervene*

To succeed on a motion to intervene as of right, a putative intervenor must establish (i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party. *See Negrón–Almeda v. Santiago,* 528 F.3d 15, 22 (1st Cir. 2008); *B. Fernández & Hnos., Inc. v. Kellogg USA, Inc.,* 440 F.3d 541, 544–45 (1st Cir.2006); *see also* Fed.R.Civ.P. 24(a).

I find that Boost has satisfied all four criteria, and may intervene as a matter of right and file its intervenor complaint. Plaintiff admitted in his Complaint that Boost has an interest in the Card Connect residuals. ("Based on Wayne's relationship with Card Connect, Boost Web became a reseller of Card Connect. Card Connect pays to Boost Web approximately $35,000 to $40,000 a month for services rendered." Compl. ¶¶ 34-35). The motion was timely filed approximately one week after Plaintiff filed its motion for a temporary restraining order. The Card Connect funds appear to be the core issue driving this case, and their fate will be decided by it. Since Boost has an interest in those funds and who controls Boost and is qualified to represent its interest is unclear, allowing Boost to intervene serves the interest of justice.

B. *Constructive Trust*

"Similar to specific performance, '[c]onstructive trusts are not substantive rights that confer a cause of action; they are remedial devices employed by courts once liability is found and where equity requires.' *In re Handy*, 624 F.3d 19, 22 (1st Cir. 2010). Under Massachusetts law, '[a] constructive trust may be said to be a device employed in equity ... in order to avoid the unjust enrichment of one party at the expense of the other.' *Barry v. Covich*, 332 Mass. 338, 124

9

N.E.2d 921, 924 (Mass.1955). Courts may impose constructive trusts 'where legal title to the property was obtained by fraud or in violation of a fiduciary relation or arose where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information.'" *N. Beacon 155 Assocs., LLC v. Mesirow Fin. Interim Mgmt. LLC*, 135 F. Supp. 3d 1, 8 (D. Mass. 2015). Boost asks the Court to impose a constructive trust over the Card Connect funds, which would in effect force Arthur Orkin to disgorge them.

Here, the parties have presented dueling accounts of who controls Boost and who has a right to access the funds in Boost's Wells Fargo Bank Account. Wayne has produced a 2011 contract between Card Connect and Pass Through Merchant Services, a dissolved Florida corporation, which he claims shows that he has the contractual right to the Card Connect funds. Defendants provided a copy of Boost's 2019 1099 tax form, which shows that it disclosed corporate income from Card Connect. Both documents were produced hastily and without much context on the date of the TRO hearing. Under these circumstances, Boost has not met its burden of proof for this Court to impose a constructive trust.

### III. Cross Motion for Expedited Discovery

In order to generate a more fulsome record on which to resolve the parties' contract and tort claims and decide how the Court should apply its equitable power over the Companies' assets, the Court **GRANTS in part** Defendants' cross-motion for expedited discovery. (Docket No. 13).

Accordingly:

1. Defendants may issue the subpoena to Intuit, Inc. for all QuickBooks records and log in credentials for Boost Web Seo X requested by Defendants at Docket No. 13.
2. Each party may propound one set of 7 requests for the production of documents by **Tuesday, August 24th**. Responses shall be due by **Tuesday, September 14th**.
3. Defendants may take the deposition of Wayne Orkin by **Monday, September 20th**, at a time and place of mutual convenience.
4. Plaintiff Wayne Orkin may take the deposition of either Defendant by **Friday, September 17th**, at a place and time of mutual convenience.
5. The Court will hold a Zoom hearing on Plaintiffs' motion for a preliminary injunction on **Tuesday, October 5th, at 3:00 pm.** Defendants and/or Boost may seek renewed equitable relief at that hearing.

Due to the emergence of the COVID-19 Delta variant, the Court urges the parties to conduct remote depositions in order to protect public health.

## Conclusion

Plaintiffs' motion for a TRO (Docket No. 7) is ***denied***; Boost Web SEO, Inc.'s motion to intervene (Docket No. 10) is ***granted in part and denied in part***, in accordance with this Order; and Defendants' motion for expedited discovery is ***granted***.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**