UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WAYNE ORKIN and ARTHUR ORKIN, <br><br> Plaintiffs, <br><br> v. <br><br> LISA SUE ALBERT and IAN ALBERT, <br><br> Defendants. | CIVIL ACTION <br> NO. 4:21-40060-TSH |

### ORDER AND MEMORANDUM ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION (Docket No. 7)

**January 10, 2022**

**HILLMAN, D.J.**

Plaintiffs Wayne and Arthur Orkin commenced this action against defendants Lisa and Ian Albert for defamation (Count I, II, III), breach of fiduciary duty (Counts IV, V), breach of contract (Counts VI, VII), unjust enrichment (Count VIII), injunctive relief (IX), and intentional interference with advantageous business relationships (Count X, XI). Wayne and Lisa are siblings, Arthur was Wayne and Lisa's father,[1] and Ian is Lisa's son. Their dispute concerns three family businesses: Boost Web SEO, Inc. ("Boost Web"), OBANC Corp. ("OBANC"), and IA Payments Corp. ("IA Payments") (collectively, "the Companies").

The plaintiffs, after filing their complaint, moved for a temporary restraining order and preliminary injunction. (Docket No. 7). In August 2021, the Court denied the plaintiffs' request for a temporary restraining order but allowed the parties to conduct expedited discovery regarding

---

[1] The defendants recently filed a suggestion of Arthur Orkin's death.

the plaintiffs' request for a preliminary injunction. (Docket No. 19). After expedited discovery, the plaintiffs filed a supplemental memorandum in support of their request for a preliminary injunction. (Docket No. 28). Although expedited discovery has provided some support for the plaintiffs' claims, the plaintiffs have not demonstrated a likelihood of success on the merits. Moreover, the plaintiffs have made no showing of irreparable harm. Accordingly, the Court *__denies__* their request for a preliminary injunction.

## Background

Boost Web is a Florida corporation specializing in search engine optimization. OBANC is a Delaware corporation specializing in e-commerce services and web optimization. IA Payments is a Delaware corporation specializing in electronic payment processing. Wayne alleges that he founded the Companies and has always served as their president. Lisa maintains that Boost Web is her company, that she is its president and sole officer, and that Wayne does not hold any equity. Ian maintains that he is the president and director of OBANC and IA Payments, and that Wayne does not hold a corporate office or any equity in either company. Both Lisa and Ian assert that Wayne has provided only sales and administrative support to the Companies.

Wayne alleges that, pursuant to a verbal agreement between Lisa and himself, he and Lisa are both officers of Boost Web, he is responsible for the day-to-day business of the company, Lisa is responsible for the accounting, and he is an authorized signer on Boost Web's bank account with Wells Fargo. Wayne also alleges that, pursuant to a verbal agreement between Ian and himself, he and Ian are both officers of OBANC and IA Payments. Lisa and Ian deny the existence of any verbal agreements designating Wayne the president or an officer of the Companies.

Wayne alleges that Lisa and Ian violated their agreements by (1) removing him as an authorized signer on Boost Web's Wells Fargo account, (2) stopping payments to him from Boost

Web and OBANC's Wells Fargo accounts, (3) informing clients and third parties that he is neither an officer of nor affiliated with the Companies, (4) not including him or keeping him informed about the Companies' tax filings, and (5) diverting corporate funds for private use.

Lisa and Ian admit that they stopped certain payments directed to Wayne and that Lisa removed him as an authorized signer on Boost Web's Wells Fargo account. Wayne admits that, in response, he directed a client of Boost Web, Card Connect, to reroute its monthly $35,000 to $50,000 payments to another account, controlled by Wayne.

Separately, the plaintiffs allege that Lisa defamed them by filing a complaint against Wayne for elder abuse with Massachusetts health agencies and at least one of Arthur's doctors. Arthur also alleged that Lisa and Ian used his credit card and JetBlue points without his consent. Lisa admits to sending the complaint but maintains that the allegations were true. Lisa and Ian maintain that they had Arthur's permission to use his credit card.

In their motion for a preliminary injunction, the plaintiffs ask the Court to enjoin the defendants from (1) removing any funds from Boost Web, OBANC, or IA Payment accounts at Wells Fargo, (2) directly or indirectly contacting clients, third-party contractors, and vendors of the Companies, and (3) directly or indirectly contacting any of Arthur's medical providers. They also ask the Court to order the defendants to (4) send Wayne all email, text, and verbal communications they have made to clients, contractors, employees, and vendors of the Companies, (5) send Wayne a copy of the taxes that they submitted to the IRS, including any and all 1099's and tax returns filed on behalf of the Companies, (6) send Wayne any and all credit card statements for the Capital One credit card used for Boost Web expenses, and any documents concerning the Companies' accounts, including the Wells Fargo account, (7) reinstate Wayne as an authorized

signer of the Companies' accounts at Wells Fargo, and (8) rescind their false statement concerning allegations of elder abuse to the Massachusetts Department of Elder Affairs.

## Legal Standard

Four factors determine whether a court should issue a preliminary injunction: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the [non-moving party] less than denying an injunction would burden the [moving party]; and (4) the effect, if any, on the public interest." *Jean v. Massachusetts State Police*, 492 F.3d 24, 26-27 (1st Cir. 2007) (citation omitted).

## Discussion

### 1. Likelihood of Success on the Merits

Likelihood of success on the merits is "the most important part of the preliminary injunction assessment." *Jean*, 492 F.3d at 27. If a movant cannot show that he is likely to succeed on the merits, "the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). In their supplemental briefing, the plaintiffs argue that they are likely to succeed on their defamation claims, breach of contract claims, and unjust enrichment claim.

#### a. Defamation (Counts I, II, III)

To prevail on a claim for defamation, a plaintiff must establish that the alleged defamatory statements were false. *Noonan v. Staples, Inc.*, 707 F. Supp. 2d 85, 89 (D. Mass. 2010); *see also Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). Counts I and III relate to statements allegedly made by Lisa about Wayne and Arthur concerning Arthur's health and medical care. On the motion for a temporary restraining order, the Court rejected the merits of this claim because Wayne and Arthur had provided no evidence, beyond conclusory allegations, that the statements

were false. Wayne has provided no new evidence, nor made any new argument, regarding these counts. As before, the plaintiffs have not demonstrated a likelihood of success on the merits.

Count II alleges that Lisa and Ian made false statements to the Companies' clients that Wayne is not affiliated with the Companies and is not an officer of the Companies. On the motion for a temporary restraining order, Wayne had not provided any detail as to when or to whom such statements were made. In supplemental briefing on the motion for a preliminary injunction, Wayne has provided an excerpt from Lisa's deposition, in which she testified that she called Card Connect to tell Card Connect that Wayne is not an authorized person on behalf of Boost Web with whom Card Connect should be dealing.[2]

To demonstrate that Lisa's statement was false, Wayne points to his LinkedIn profile, which lists him as a co-founder of Boost Web and OBANC; his Boost Web email signature, which lists his title as President; and an email from an accountant describing Wayne as a shareholder and officer of Boost Web. Wayne further points to a receipt from his purchase of the Boost Web website domain name in 2012, a year before Lisa registered Boost Web as a corporation; a lease agreement for office space for Boost Web, signed by Lisa as "Lisa Albert for Wayne Orkin;" a check deposited to the Boost Web Wells Fargo account made out to "Boost Web SEO, Wayne Orkin;" an agreement assigning rights to residual payments from one of Wayne's other companies to Boost Web; and emails demonstrating that Wayne was involved in Boost Web's tax and financial planning.

---

[2] Wayne has pointed to other statements which he claims are false, such as a statement Ian made in a deposition in another lawsuit, but those other statements do not support the allegation in the plaintiffs' complaint -- that Lisa and Ian published defamatory statements *to clients*.

In contrast, Lisa points to Boost Web's Florida corporation annual report for the 2018, 2019, and 2020 tax years, all of which list her as the president, and Boost Web's articles of incorporation, which list her as the initial officer and/or director.[3] Likewise, Ian points to OBANC and IA Payments' Delaware annual franchise tax reports for the 2020 tax year, both of which list him as the president of those companies.[4]

The evidence suggests, contrary to the defendants' assertion, that Wayne has provided more than administrative and sales support to the Companies. The evidence does not establish, however, as Wayne contends, that he is the president or an officer of the Companies.[5] Indeed, the corporate documents put Lisa and Ian in charge. To the extent that Lisa and Ian are in charge, the Court sees no reason why they cannot determine who is, and who is not, authorized to deal with the Companies' clients on the Companies' behalf. Thus, Lisa's statement to a Boost Web client that Wayne is not an authorized person on behalf of Boost Web with whom the client should be dealing was not necessarily false. Whether or not Wayne ultimately succeeds on this claim, he has not demonstrated a sufficient likelihood of success at this stage. *See Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 10 (1st Cir. 2012) (to demonstrate a likelihood of success, a plaintiff must show more than a mere possibility of success).

---

[3] Boost Web's 2018 and 2020 tax returns also list Lisa as owning 100% of the voting stock.

[4] Ian's LinkedIn profile, however, lists his position at OBANC as "Operations Manager," and part of the description states, "Assisted and attending the president of OBANC at conferences."

[5] Wayne argues that ownership of a Florida corporation (like Boost Web) is not based on the registered documents of the corporation, but on the amount of capital each person contributes to the corporation. The cases he cites, however, stand only for the proposition that a corporations' ownership *may* be determined by capital contribution, not that capital contribution is the exclusive determinant in all scenarios. *See Hyman v. Daoud*, 194 So. 3d 392, 295 (Fl. Dist. Ct. App. 2016); *Reed v. Honoshofsky*, 76 So. 3d 948, 952 (Fl. Dist. Ct. App. 2011).

*b. Breach of Contract (Counts VI, VII)*

Counts VI alleges that Lisa violated a purported agreement with Wayne to allow Wayne to manage Boost Web and its day-to-day operations while Lisa managed the accounting, with the understanding that both are corporate officers, and that Wayne is an authorized signer on the Boost Web Wells Fargo account. Count VII alleges that Ian made the same agreement with Wayne as to OBANC and IA Payments. Both counts charge that Ian and Lisa broke their respective agreements when Lisa stopped payments made by Wayne from the Boost Web Wells Fargo account, removed Wayne as an authorized user of that account, and when Lisa and Ian diverted money from the Companies for their own personal use.

Based on the limited evidence in the record, the Court cannot conclude that the alleged agreements likely are as Wayne claims them to be. The existence of an oral contract depends on the intentions of the parties, which requires the fact finder to, *inter alia*, consider the credibility of the witnesses and weigh competing inferences. *See Salem Laundry Co. v. New England Teamsters and Trucking Industry Pension Fund*, 829 F.2d 278, 280 (1st Cir. 1987); *see also Kolodziej v. Mason*, 774 F.3d 736 (11th Cir. 2014) (A valid contract -- premised on the parties' requisite willingness to contract -- may be manifested through written or spoken words, or inferred in whole or in part from the parties' conduct.") (quotations omitted). The limited record before the Court suggests that Wayne played a role in running the Companies, but it also suggests that Lisa and Ian controlled the Companies. While the circumstances indicate the existence of *some* agreement, the Court cannot conclude, at this stage, that that agreement prevented Lisa and Ian from stopping payments to Wayne, removing Wayne from the Wells Fargo accounts, or using the Companies' funds for themselves. Accordingly, Wayne has not demonstrated a likelihood of success on these claims.

*c. Unjust Enrichment (Count VIII)*

Count VIII alleges that Lisa and Ian will be unjustly enriched through their improper retention of funds owed to the Companies and profits owed to Wayne, and for not reimbursing Wayne for his expenses related to the Companies.  A claim for unjust enrichment requires "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstance would be inequitable without payment for its value." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009); *see also Marrache v. Bacardi U.S.A. Inc.*, 17 4th 1084, 1101 (11th Cir. 2021).

Wayne argues that he is likely to succeed on his unjust enrichment claim because he is the president and officer of Boost Web, he provided money to Boost Web for his and Lisa's benefit, and Lisa diverted the money from the Boost Web Wells Fargo account for her own use.  First, as noted, Wayne has not sufficiently demonstrated that he is the president or an officer of Boost Web.  Second, whether Wayne is entitled to any of the Wells Fargo funds likely depends on whether he holds equity in the company.  The evidence that Wayne has equity in the company is one email sent by an accountant for the Companies, in December 2020 regarding 2018 financials, with a chart titled "Shareholder Notes Payable," listing Wayne with a balance of over $56,000.  Lisa counters that the term "Shareholder Notes Payable" is a classification by the accountant that does not reflect an equity interest.  Due to the dearth of evidence at this stage, regardless whether Wayne ultimately succeeds on this claim, the Court cannot conclude that he has demonstrated a likelihood of success.

*2. Irreparable Harm*

Irreparable harm "constitutes a necessary threshold showing for an award of preliminary injunctive relief." *Charlesbank Equity Funds II v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). "[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). "The burden of demonstrating that a denial of interim relief is likely to cause irreparable harm rests squarely upon the movant." *Charlesbank*, 370 F.3d at 162. "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Id.* Courts measure irreparable harm on "a sliding scale, working in conjunction with a moving party's likelihood of success on the merits." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009).

Wayne argues that he will suffer irreparable harm absent a preliminary injunction because continued statements by Lisa and Ian will cause clients to distrust the ability of the Companies to render their services, representing a loss of good will and an incalculable loss of revenue. From Lisa's deposition, however, it appears that she has not had any contact with Boost Web's clients concerning Wayne, except for Card Connect. And as to Card Connect, Wayne already has diverted their monthly payments to an account he controls. Accordingly, Wayne has not met his burden of demonstrating that Lisa and Ian's actions are causing continuing, present adverse effects. *See Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009). To the extent Lisa and Ian are being unjustly enriched or breaching their contracts by retaining funds from the Wells Fargo account, such wrongs can be remedied by damages.

### 3. Balance of the Equities and Public Interest

In determining whether to grant a preliminary injunction, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or

9

withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987)). Courts also consider the public's interest "in the issuance of the injunction itself." *Braintree Laboratories*, 622 F.3d at 45 n.8.

Wayne argues that Lisa and Ian will lose nothing if the injunction is granted. But the requested equitable relief concerning the Companies is to reinstate Wayne as an authorized signer of the Companies' Wells Fargo accounts and prevent Lisa and Ian from removing any funds from such accounts, or contacting clients, third-party contractors, and vendors of the Companies. This would essentially lock Lisa and Ian out of the Companies. The balance of the equities does not favor the requested equitable relief.

Wayne argues that upholding contract rights will not adversely affect the public interest. Maybe so, but where Wayne has not demonstrated a strong likelihood of success on the merits of his contract claims, the Court cannot be certain that granting Wayne's requested relief would properly uphold any rights. *See Dunkin' Donuts Franchised Restaurants LLC v. Wometco Donas Inc.*, 53 F. Supp. 3d 221, 232 (D. Mass. 2014) (when there is no measurable effect on the public interest, court relies more heavily on other criteria).

## Conclusion

For the reasons stated, the plaintiffs' motion for a preliminary injunction (Docket No. 7) is ***denied***.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**