UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WAYNE ORKIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 21-40060-LTS |
| | ) | |
| LISA SUE ALBERT and IAN ALBERT, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| BOOST WEB SEO, INC. | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WAYNE ORKIN, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

ORDER ON DEFENDANTS' AND
INTERVENOR-PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT (DOC. NO. 105)
AND PLAINTIFF'S AND INTERVENOR-DEFENDANT'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 122)

February 1, 2023

SOROKIN, J.

Plaintiff Wayne Orkin and his father, the late Arthur Orkin (who was dismissed as a party

to the case following his death), commenced this action in May 2021 against Defendants Lisa

Albert (Wayne's sister and Arthur's daughter) and Ian Albert (Lisa's son, Wayne's nephew, and

Arthur's grandson). Doc. Nos. 1, 5, 87.[1] Subsequently, Boost Web SEO, Inc. intervened and filed an Intervenor Complaint alleging claims against Wayne Orkin. Doc. No. 23. This case is an intra-family dispute concerning various allegations of misconduct related to the operation of multiple family businesses as well as alleged defamatory statements. Doc. Nos. 1-1, 23. The Alberts and Intervenor-Plaintiff Boost Web now seek partial summary judgment on the Intervenor Complaint (Doc. No. 23) for release of funds currently held by third-party CardConnect, Corp. (which the Court assesses under the conversion claim, Count I) and an accounting (Count III). Doc. Nos. 105, 106. They also seek partial summary judgment against three counts asserted by Wayne Orkin against Lisa Albert in the original Complaint (Doc. No. 1-1): a defamation claim (Count I) and two claims alleging intentional interference with advantageous business relationships (Counts X and XI). Doc. Nos. 105, 106. Plaintiff/Intervenor-Defendant Wayne Orkin cross-moves for partial summary judgment on two counts asserted by Boost Web in the Intervenor Complaint: a conversion claim (Count I) and an unjust enrichment claim (Count II). For the reasons explained below, the Alberts and Boost Web's Motion for Partial Summary Judgment (Doc. No. 105) is DENIED as to the request for release of funds currently held by third-party CardConnect but ALLOWED in all other respects. Wayne Orkin's Cross-Motion for Partial Summary Judgment (Doc. No. 122) is DENIED as to the conversion claim but ALLOWED as to the unjust enrichment claim.

---

[1] Citations to "Doc. No. __ at __" reference items appearing on the court's electronic docketing system, and pincites are to the page numbers in the ECF header.

I.   <u>BACKGROUND</u>[2]

Wayne Orkin and his late father, Arthur Orkin,[3] filed the original Complaint in this case on May 28, 2021 in state court, and Defendants removed the action to federal court on June 7, 2021. Doc. Nos. 1, 5. The original Complaint alleged 11 counts against Lisa and Ian Albert. Doc. No. 1-1 ¶¶ 1, 59–115. These claims were for defamation, breach of fiduciary duty, unjust enrichment, intentional interference with advantageous business relationship, and breach of contract. <u>Id.</u> The Orkins also sought a preliminary injunction in the Complaint. <u>Id.</u> ¶¶ 1, 100–103.

About two months after the case was originally filed, Boost Web SEO, Inc. ("Boost Web"), a Florida corporation, filed a Motion to Intervene. Doc. No. 10. Judge Hillman, the judge previously assigned to this case, granted that motion, Doc. No. 19, and Boost Web filed an Intervenor Complaint on August 26, 2021 alleging three counts against Wayne Orkin, the Intervenor-Defendant, for conversion, unjust enrichment, and accounting. Doc. No. 23.

Boost Web is a corporation specializing in search engine optimization, merchant processing, and credit card processing. Doc. No. 125 ¶ 1. Boost Web's Articles of Incorporation list Lisa Albert as the registered agent, incorporator, and sole "initial officer(s) and/or director(s)." Doc. No. 23-2 at 2–3. Florida Secretary of State reports for each year from 2018 to

---

[2] Unless specifically noted, these facts are undisputed. "Where material disputes remain, they are highlighted in the court's legal analysis and viewed in the light most favorable to the non-moving party." <u>Davis v. Murphy</u>, No. 13-CV-11900-IT, 2018 WL 1524532, at *1 (D. Mass. Mar. 28, 2018).

[3] Arthur Orkin passed away on or about October 21, 2021. Doc. No. 40. The Alberts filed a suggestion of death on November 2, 2021. <u>Id.</u> The Alberts moved for the dismissal of Arthur Orkin's claims against them on May 11, 2022 on the basis that no party had been substituted to prosecute Arthur Orkin's claims, and Federal Rule of Civil Procedure 25(a)(1) provides that an action by a decedent must be dismissed if there is no motion to substitute a party within 90 days of service of a statement noting the death. Doc. No. 65, 66. Judge Hillman, the judge previously assigned to this case, granted the Alberts' motion over Wayne Orkin's opposition and terminated Arthur Orkin as a party on June 1, 2022. Doc. No. 87; <u>see also</u> Doc. No. 80.

2021 list Lisa Albert as the "current registered agent" and "officer/director," and she signed each of those reports as "President." Doc. No. 23-1 at 2; Doc. No. 23-3 at 2–4. Wayne Orkin's role in and authority over Boost Web is disputed and is discussed further in the discussion section below. Doc. No. 125 ¶ 2; infra Section III.A.1.

Financial Transaction Services, Inc. ("FTS") was a credit card processing platform for which agents sell FTS products and services in exchange for residual income based on fees paid by the merchants to FTS. Doc. No. 106 at 3. Prior to the formation of Boost Web in 2013, Pass Thru Merchant Services, LLC ("Pass Thru"), controlled by Wayne Orkin, was an agent for FTS under an agent agreement (the "Assignor ISO Agreement"). Doc. No. 125 ¶ 3; Doc. No. 59-3 at 5–15. FTS later rebranded as CardConnect, which became an in-house independent sales organization of Fiserv, Inc. responsible for acquiring agents, like Pass Thru, to sell credit card processing products and services to merchants. Doc. No. 125 ¶ 4. On January 23, 2014, FTS and Wayne Orkin signed a Consent to Assignment Agreement (the "2014 Assignment Agreement") with FTS for Pass Thru to assign to Boost Web "all right, title, and interest to residuals and compensation under the Assignor ISO Agreement." Doc. No. 59-3 at 17–20; Doc. No. 125 ¶ 5. Wayne Orkin's signature appears only once on the 2014 Assignment Agreement, Doc. No. 59-3 at 20, but it is undisputed that Pass Thru and Boost Web were both parties to this Agreement. Doc. No. 125 ¶ 5.

The 2014 Agreement contains the following relevant positions:

**WHEREAS** the Assignor wishes to assign to the Assignee all right, title and interest to residuals and compensation under the Assignor ISO Agreement to the Assignee ("Assignment");

\*        \*        \*

4. **Assignment.** The parties hereto hereby agree that as of January 23, 2014 (the "**Effective Date**"), the Assignment will take effect and the residuals for the

Merchants Assigned shall be paid to Assignee after such date. As such, all payments after the Effective Date shall be made to Assignee.

\*      \*      \*

9. **Interim or Final Termination.** FTS shall continue to make the residual income or other ISO payments to Assignee [Boost Web] unless and until it receives either written instructions executed by both the Assignor [Pass Thru] and Assignee [Boost Web], or an order of any court of competent jurisdiction requiring it to make different payment arrangements."

\*      \*      \*

14. **Whole Agreement.** . . . This Agreement may only be modified by a writing signed by all Parties. Notwithstanding same, if the Assignor and Assignee agree in a writing signed by both to the applicability of this Agreement to new and additional merchant accounts referred by Assignor after the Effective Date, FTS shall consider such new and additional merchant accounts as encompassed by the terms of this Agreement.

Doc. No. 59-3 ¶¶ 4, 9, 14. From 2014 to April 2021, CardConnect paid into Boost Web's Wells Fargo Bank account all residuals for merchants originated by Pass Thru both before and after the date of the 2014 Assignment Agreement. Doc. No. 125 ¶ 9.[4]

In April 2021, for reasons that the parties dispute, Lisa Albert terminated Wayne Orkin's access to Boost Web's Wells Fargo bank account. Id. ¶ 11. Shortly thereafter in May 2021, Lisa Albert sent letters to several of her father Arthur Orkin's doctors regarding her concerns about his care. Doc. No. 107-1 at 2–7. The letters state that Wayne Orkin had assumed the role of Arthur Orkin's "primary care-taker," raise concerns about whether Arthur Orkin was receiving appropriate care based on several recent emergency room visits and numerous other alleged facts

---

[4] Though the fact that all residuals originated by Pass Thru both before and after January 23, 2014 were actually paid to Boost Web is undisputed, the parties dispute whether the 2014 Assignment Agreement applied to residuals from all merchants originated by Pass Thru (the Alberts' and Boost Web's position), or just to merchants originated by Pass Thru that had been assigned to Pass Thru before January 23, 2014 (Wayne Orkin's position). Doc. No. 125 ¶ 6; Doc. No. 122 at 11–12. No party has produced or alleged the existence of the type of sub-assignments described in paragraph 14 of the 2014 Assignment Agreement.

about her father's experiences, and assert that UMass Memorial (Arthur Orkin's primary healthcare provider) had "ethical and moral responsibilities to their patient and [to] take reasonable steps to ensure that he is being cared for in the appropriate manner." Id. Though the parties dispute Lisa Albert's reasons for sending the letters, it is undisputed that Wayne Orkin suffered no compensable losses as a result of these letters. Doc. No. 125 ¶ 15.

On April 29, 2021, Lisa Albert sent an email to "partnercompliance@cardconnect.com" regarding her concerns with Wayne Orkin's "fraudulent activities." Doc. No. 96-4 at 86. The letter states that Lisa Albert is "President of Boost Web SEO" and that Boost Web "ha[s] been experiencing fraudulent activities with a Wayne Orkin, who may have attempted to either access, change, or otherwise alter any arrangements between you (First Data/Card Connect) and Boost Web SEO." Id. It further notes that "[t]his is currently a civil and criminal matter that is being pursued" and that "Wayne Orkin is not an authorized representative of Boost Web SEO and any such attempted activity by him will be further pursued in court." Id.

Wayne Orkin and Arthur Orkin filed the present action on May 28, 2021 in state court, and Defendants removed the action to federal court on June 7, 2021. Doc. Nos. 1, 5. Less than a week after filing this action, on June 3, 2021 Wayne Orkin entered into an agreement with Laith Yaldoo of MKY FTS Sales, LLC (MKY) (previously employed at CardConnect as Director of ISO Sales) and Erik Nicholson of CardConnect redirecting the CardConnect residuals from Boost Web to MKY (the "MKY Agreement"). Doc. No. 59-3 at 23, 36–41; Doc. No. 125 ¶ 16. Wayne Orkin's signature on the MKY Agreement document is explicitly as President of Pass Thru. Doc. No. 59-3 at 37. Boost Web was not listed as a party to the MKY Agreement and is not mentioned anywhere in the MKY Agreement document. Id. at 36–41. Boost Web is also not mentioned anywhere in the email chain between Wayne Orkin, Laith Yaldoo, and other

representatives of CardConnect and Fiserv in which Laith Yaldoo instructed CardConnect to redirect the residuals "for our long time friend and agent partner Wayne Orkin" to MKY "until further notice" and Wayne Orkin confirmed Mr. Yaldoo's instructions. Id. at 31–34. Following the signing of the MKY Agreement, CardConnect commenced the redirection of the residual payments to MKY. Doc. No. 125 ¶ 21; Doc. No. 106 at 5. The MKY funds were routed into a People's United Bank account under Wayne Orkin's control. See Doc. No. 111 at 6, 11–12, 29; Doc. No. 125 ¶ 21.

In May 2021, Lisa Albert discovered that CardConnect had not deposited the monthly residual payment into Boost Web's bank account, and on May 26, 2021 she sent an email to CardConnect inquiring about the missing residual payment. Doc. No. 108-2 at 2; Doc. No. 125 ¶ 22. CardConnect did not respond. Doc. No. 125 ¶ 23. She then sent a letter to CardConnect through her counsel on June 30, 2021 again inquiring about the missing residuals, and still received no response. Doc. No. 108-3 at 2; Doc. No. 125 ¶¶ 24–25. On August 24, 2021, Boost Web sent a letter through counsel to the Executive Vice President and Chief Legal Officer of Fiserv (CardConnect is an in-house independent sales organization of Fiserv) asserting Boost Web's entitlement to the residuals and noting "what appears to be troubling conduct by certain employees at CardConnect, LLC in supporting redirection of funds from Boost Web by a former salesman, Wayne Orkin." Doc. No. 108-4 at 2–3. The letter concludes, "[I]f the Court agrees that Mr. Orkin embezzled these funds and discovery reveals that CardConnect personnel knowingly assisted Mr. Orkin in doing so, Boost Web will seek to hold CardConnect liable for any funds that it is unable to recover from Mr. Orkin." Id. at 3. Throughout multiple months in the spring/summer of 2021, CardConnect continued paying residuals to MKY instead of to Boost Web. Doc. No. 125 ¶ 27. It ceased paying the residuals to MKY at some point in the late summer

or fall of 2021. Id. ¶ 28; Doc. No. 108-5 at 3. Counsel for Fiserv/CardConnect sent a letter to counsel for the parties in this case on November 26, 2021 stating, "Upon receipt and review of [Boost Web counsel] Mr. Schwartz['s] letter and its threatened claim against CardConnect, CardConnect froze all payments of the Residuals to maintain the status quo." Doc. No. 108-5 at 2. The letter notes that it "relied in good faith upon Mr. Orkin as a long-time agent of CardConnect and representative of Pass Through [sic] that the request was authorized," and that "CardConnect is not taking any position as to the appropriate or rightful disposition of the residuals." Id. at 2–3. The letter concludes, "We will continue to hold these amounts and all future Residuals when they come due until the parties provide (1) a joint direction as to the distribution of these funds (current and future) or (2) a court order specifically directing the distribution of the funds to a particular party." Id. at 3. CardConnect continues to hold the frozen residuals as they accrue over time; as of the end of June 2022, CardConnect was holding $439,063.16 in residuals. Doc. No. 125 ¶ 29.

II.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party "has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v. Dynamics Rsch. Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The Court is "obliged to []view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the

8

Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). A court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The present Order resolves the two summary judgment motions: the Motion for Partial Summary Judgment filed by the Alberts and Boost Web, Doc. No. 105, and the Cross-Motion for Partial Summary Judgment filed by Wayne Orkin, Doc. No. 122. In assessing the former Motion, where Wayne Orkin is the nonmovant, the Court views the record in the light most favorable to Wayne Orkin and draws all reasonable inferences in his favor. The Court then applies this same standard in the opposite direction when assessing Wayne Orkin's Cross-Motion, viewing the record and drawing reasonable inferences in Boost Web's[5] favor.

III.   DISCUSSION

    A.   Lisa and Ian Albert and Boost Web's Motion for Partial Summary Judgment

        1.   *Residuals Held by CardConnect*

Boost Web and the Alberts seek a court order directing CardConnect to release the residuals it is currently holding to Boost Web. Doc. No. 106 at 1, 11. The Court views this request as falling within the Intervenor Complaint's conversion claim (Count I), Doc. No. 23 ¶¶ 29–32, as resolution of the conversion claim requires determination of whether Boost Web has a

---

[5] The claims at issue in Wayne Orkin's Cross-Motion for Summary Judgment are claims from the Intervenor Complaint. Doc. No. 122 at 17–21; Doc. No. 23. The Alberts are not parties to the intervenor action between Boost Web (the intervenor-plaintiff) and Wayne Orkin (the intervenor-defendant). Doc. No. 23. Thus, Wayne Orkin is the movant and Boost Web (but not the Alberts) is the nonmovant in the analysis of the Cross-Motion for Summary Judgment.

valid property claim to the CardConnect residuals. See Weiler v. PortfolioScope, Inc., 12 N.E.3d 354, 365 (Mass. 2014) (explaining that to be liable for conversion in Massachusetts, a party must "wrongfully 'exercise dominion or control over the personal property of'" another (quoting Third Nat'l Bank of Hampden Cnty. v. Continental Ins. Co., 446 N.E.2d 380, 383 (Mass. 1983))).

Wayne Orkin opposes this request, first, by arguing that the theory Boost Web now advances is outside the scope of the Intervenor Complaint. Doc. No. 122 at 8–10. The Intervenor Complaint alleges that "[o]nce Boost terminated Mr. Orkin's access to the Boost Account, Mr. Orkin redirected CardConnect funds due to Boost to his account and, upon information and belief, is paying his personal expenses from Boost funds without authority to do so." Doc. No. 23 ¶ 21. The Intervenor Complaint then states a claim for conversion (Count I), alleging that "Mr. Orkin unlawfully and without authority obtained possession and control over funds from CardConnect due to Boost." Id. ¶ 31. Boost Web now seeks a determination by this Court that those funds allegedly due to Boost Web that are being held in escrow by CardConnect pending the outcome of this litigation, Doc. No. 125 ¶¶ 29, 31, belong to Boost Web and should be ordered released to Boost Web. Doc. No. 106 at 8, 11.[6] Because Boost Web alleged the "essential allegations" of this claim in the Intervenor Complaint, its pleadings are sufficient to request the relief it now seeks. NASCO, Inc. v. Pub. Storage, Inc., 29 F.3d 28, 34–35 (1st Cir. 1994) ("We have construed Fed.R.Civ.P. 8 to allow recovery under an unpleaded legal theory so

___

[6] The Court rejects Wayne Orkin's argument that the Court lacks jurisdiction to order CardConnect to release the funds because CardConnect is a nonparty to the case. Doc. No. 122 at 10–11. CardConnect does not claim any entitlement to the residuals at issue. Doc. No. 108-5. CardConnect stated in a letter to counsel for the parties in this case that it is holding the residuals until "the parties provide (1) a joint direction as to the distribution of these funds (current and future) or (2) a court order specifically directing the distribution of the funds to a particular party." Id. at 3. The Court has jurisdiction to decide the question of whether Boost Web has a legal entitlement to the funds as opposed to MKY/Wayne Orkin.

long as related legal theories and essential allegations have been pleaded." (citing <u>Conn. Gen.</u>

<u>Life Ins. Co. v. Universal Ins. Co.</u>, 838 F.2d 612, 622 (1st Cir.1988))).[7]

Turning to the merits, all parties agree that the 2014 Assignment Agreement applied at

least to residuals from merchants originated by Pass Thru <u>before</u> January 23, 2014. <u>See</u> Doc. No.

125 ¶ 6. However, Wayne Orkin alleges that there is a dispute of material fact concerning

---

[7] In an abundance of caution, the Court reviews Wayne Orkin's contention in detail. Wayne Orkin argues, "The Defendants' Intervenor Complaint states only that 'Boost receives residuals paid by CardConnect for credit card processing services introduced to CardConnect by Boost.' Intervenor Comp. ¶ 11. The Plaintiffs now advance that the residuals do not originate as payment for credit card processing services introduced to CardConnect by Boost, but through an assignment agreement that assigns Boost Web the residuals due to Pass Thru Merchant Services ("Pass Thru") for its work with CardConnect." Doc. No. 122 at 9. However, nothing about this difference prejudiced Wayne Orkin's ability to respond to the Motion for Partial Summary Judgment on the merits. He has not specified any additional discovery that he would need to fully address this claim by Boost Web at summary judgment. Nothing prevented him from disputing the facts presented or their legal significance in opposing this Motion, and in fact, the key details of the residual payment assignment agreement that the Alberts and Boost present in this Motion and that Wayne Orkin complains about here are consistent with Wayne Orkin's rendition of these key facts in other recent filings. <u>See, e.g.</u>, Doc. No. 97 at 4 (describing the assignment agreement under which FTS (now CardConnect) residuals from merchants originated by Pass Thru are assigned to Boost Web); Doc. No. 60 at 3 (same). In the present Motion, Boost Web is merely adding factual detail based on findings during discovery to allegations already asserted in a general manner in the Intervenor Complaint, rather than seeking to add an entirely new claim, theory, or party. <u>Cf.</u> Doc. Nos. 96, 97 (seeking to amend the Complaint to add numerous new claims and multiple new parties); Doc. No. 131 at 11–12 (denying the "sweeping amendment proposed" on undue delay grounds, where the amendment would have required reopening fact discovery).

The present case is distinguishable from the cases Wayne Orkin cites for the proposition that courts deny summary judgment when the movant requested relief based on a theory not advanced in their complaint. <u>See</u> Doc. No. 122 at 9. Here, Boost Web is not "alleg[ing] breach of one agreement in its complaint and rais[ing] breach of an entirely different agreement when it confronts difficulty in proving its original allegation," <u>Diomed, Inc. v. Vascular Sols., Inc.</u>, 417 F. Supp. 2d 137, 141 (D. Mass. 2006), nor is it introducing a "wholly distinct, unpled theory seeking to prove something different." <u>Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co.</u>, 573 F. Supp. 3d 513, 538 (D. Mass. 2021). To the contrary, here, the Intervenor Complaint contains the "essential allegations," <u>Diomed</u>, 417 F. Supp. at 141, because it alleges generally an arrangement under which CardConnect paid residual funds to Boost Web, Doc. No. 23 ¶¶ 11, 21, 31, and the Motion for Partial Summary Judgment alleges the same agreement with greater specificity, clarifying that the residuals CardConnect paid to Boost Web were originated by Pass Thru, not Boost Web. Doc. No. 106 at 4, 8.

whether the 2014 Assignment Agreement applied to residuals from <u>all</u> merchants originated by Pass Thru (the Alberts' and Boost Web's position), or just to merchants originated by Pass Thru before January 23, 2014 (Wayne Orkin's position). Doc. No. 125 ¶ 6; Doc. No. 122 at 11–12. The 2014 Assignment Agreement states, "if the Assignor and Assignee agree in a writing signed by both to the applicability of this Agreement to new and additional merchant accounts referred by Assignor after the Effective Date, FTS shall consider such new and additional merchant accounts as encompassed by the terms of this Agreement." Doc. No. 59-3 ¶ 14. Here, by explaining a process that may be used to add additional merchants originated by Pass Thru after January 23, 2014 to the agreement, the plain terms of this provision make clear that the Agreement as originally written applied only to merchant accounts referred by Pass Thru (the "Assignor") <u>before</u> the January 23, 2014 effective date. Every word of a contract "must be presumed to have been employed with a purpose and must be given meaning and effect wherever practicable." <u>Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London</u>, 871 N.E.2d 418, 425 (Mass. 2007) (internal quotation marks omitted) (quoting <u>Jacobs v. U.S. Fid. & Guar. Co.</u>, 627 N.E.2d 463, 464 (Mass. 1994)). If the 2014 Assignment Agreement under its original terms already applied to "new and additional merchant accounts referred by Assignor after the Effective Date," then the portion of paragraph 14 quoted above would be superfluous. Moreover, no text in the Agreement expressly subjects merchants recruited after the execution of the Agreement to the terms of the Agreement in the absence of any additional signed writing.

The record before the Court does not evidence a written agreement incorporating residuals from merchants originated by Pass Thru after January 23, 2014 into the 2014 Assignment Agreement. However, the parties agree that from 2014 to 2021, all residuals originated by Pass Thru both before <u>and after</u> January 23, 2014 were <u>actually paid by</u>

CardConnect to Boost Web. Doc. No. 125 ¶ 9. Wayne Orkin did not object to this payment practice. Id. It is possible that the parties agreed to a modification of the 2014 Assignment Agreement orally or in writing, or that the parties entered into a separate binding agreement of unknown terms regarding the residuals originated by Pass Thru after January 23, 2014. But on the record presently before the Court, and drawing all inferences in Wayne Orkin's favor, Boost Web has not met its burden of showing that it has a valid claim to the residuals originated by Pass Thru after January 23, 2014 because the terms of any such agreement are not before the Court and the course of dealing alone is insufficient to establish, as a matter of law, Boost Web's ongoing entitlement to residuals from merchants originated after January 23, 2014. Therefore, summary judgment is DENIED as to Boost Web's entitlement to any residuals originated by Pass Thru after January 23, 2014.

Boost Web's entitlement to the residuals originated by Pass Thru before January 23, 2014, subsequently reassigned by Wayne Orkin to MKY, and now held by CardConnect turns in part on whether Wayne Orkin had actual authority[8] to act on behalf of Boost Web to agree to the redirection of residuals from Boost Web to MKY in June 2021. The parties present dueling facts on Wayne Orkin's position in Boost Web—facts key to the determination of his actual authority.[9] On the one hand, the Articles of Incorporation for Boost Web list Lisa Albert as the

---

[8] The Court adjudicates here competing assertions by Boost Web and Wayne Orkin of entitlement to the redirected residuals. Resolution of this dispute turns on Wayne Orkin's actual authority to redirect the funds, not his apparent authority to CardConnect, if any, to order the redirection.

[9] Wayne Orkin alleges that he was founder, officer, and president of Boost Web, whereas Lisa Albert alleges that she is the sole officer and shareholder. Doc. No. 125 ¶ 2; Doc. No. 122 at 2. Wayne Orkin need not be the president of Boost Web to have actual authority to act on its behalf. For example, an agent of a principal may have actual authority to act on behalf of the principal in some situations. Focused Impressions, Inc. v. Sourcing Grp., LLC, No. 19-CV-11307-ADB, 2020 WL 1235366, at *4 (D. Mass. Mar. 13, 2020) ("Actual authority for an agent to act on behalf of a principal is 'a product of mutual consent, express or implied, that the agent

only "initial officer(s) and/or director(s) of the corporation." Doc. No. 23-2 at 3. Lisa Albert is

also listed as the registered agent for Boost in each of the 2018, 2019, 2020, and 2021 Florida

Profit Corporation Annual Report. Doc. No. 23-1 at 2; Doc. No. 23-3 at 2–4. She signed all of

those reports as "President." Doc. No. 23-1 at 2; Doc. No. 23-3 at 2–4. Additionally, Lisa Albert

was able to terminate Wayne Orkin's access to Boost Web's Wells Fargo bank account in 2021,

Doc. No. 125 ¶ 11, demonstrating that she had a certain degree of control over the business's

bank account.

On the other hand, Wayne Orkin has presented evidence suggesting he did have actual

authority to agree on behalf of Boost Web to the redirection of residuals. For example, Wayne

Orkin was the only person from Boost Web or Pass Thru to sign the 2014 Assignment

Agreement. Doc. No. 59-3 at 20; Doc. No. 96-4 ¶ 7. Though he only signed the agreement once

(not separately on behalf of Boost Web and Pass Thru) and the writing on the signature page

itself does not clearly suggest that his signature was on behalf of both companies, see Doc. No.

59-3 at 20, all parties to the agreement acted as if Wayne Orkin's signature represented Boost

Web's agreement to the terms of the 2014 Assignment Agreement. See Doc. No. 125 ¶ 5. In

support of his assertion that he founded Boost Web but had Lisa Albert register it as a

corporation at his direction, he has produced evidence that he bought the Boost Web Website in

2012, a year prior to Lisa registering Boost Web as a corporation. Doc. No. 28-2 at 2–3. He also

produced a lease agreement for office space for Boost Web, which Lisa Albert signed in 2013

not just as herself but as "Lisa Albert for Wayne Orkin." Id. at 5. Wayne Orkin previously had

access to Boost Web's Wells Fargo bank account, prior to Lisa Albert's termination of his access

---

is to act on behalf and for the benefit of the principal, and subject to the principal's control.'"
(quoting CNE Direct, Inc. v. Blackberry Corp., 821 F.3d 146, 150 (1st Cir. 2016))).

in 2021. Doc. No. 125 ¶ 11. He demonstrates that Lisa Albert knew that he was an officer and shareholder, as he forwarded her accounting emails in 2020 where he discussed 2018 "shareholder notes payable" for Boost Web and OBANC, another of his companies, with Boost Web's accountant. Doc. No. 28-2 at 7–9. And he has filed affidavits from employees of CardConnect stating that no one other than Wayne Orkin communicated with CardConnect on behalf of Boost Web. Doc. No. 96-4 at 23–24, 26–27. Viewing the record in the light most favorable to Wayne Orkin and drawing all reasonable inferences in his favor, there is a genuine dispute of material fact on this question of Wayne Orkin's actual authority to act on behalf of Boost Web to redirect residuals from Boost Web to MKY in June 2021.

Regardless of Wayne Orkin's actual authority, there is a further genuine dispute of material fact as to whether Wayne Orkin was exercising the actual authority he possessed, if any, to act on behalf of Boost Web when he directed and signed off on the redirection of the residuals to MKY. This is a material fact because the terms of the 2014 Assignment Agreement require FTS (CardConnect) to continue to pay the residuals to "Assignee," Boost Web, "unless and until it receives either written instructions executed by both the Assignor and Assignee, or an order of any court of competent jurisdiction requiring it to make different payment arrangements." Doc. No. 59-3 at 18. The email chain between Wayne Orkin and representatives of CardConnect redirecting the residuals to MKY in 2021 mentions Pass Thru but makes no reference to Boost Web. Doc. No. 96-4 at 31–34. The actual "Residual Redirection Application and Agreement" only mentions and is signed by Card Connect, MKY, and Pass Thru. Id. at 36–38. Wayne Orkin explicitly signed as President of Pass Thru; Boost Web is not mentioned anywhere in the document. Id. And as previously discussed, on the 2014 Assignment Agreement a single signature by Wayne Orkin that did not explicitly state it was a signature for both Boost Web and

Pass Thru was taken by all parties to be an agreement on behalf of Boost Web. Doc. No. 59-3 at 20; Doc. No. 125 ¶ 5. Few of the actions before the Court are plainly and clearly documented by contemporaneous writings. Drawing all reasonable inferences in Wayne Orkin's favor, Wayne Orkin's participation in the 2021 Agreement may have constituted an exercise of his actual authority, assuming he had such authority, to redirect the residuals to MKY, just as he acted on behalf of Boost Web in the 2014 Agreement in the absence of express evidence of Boost Web's signature on the contract. Thus, even if Wayne Orkin did have the actual authority to act on behalf of Boost Web, there is a genuine dispute as to whether he was acting on behalf of Boost Web, and not just Pass Thru, in agreeing to the redirection. Accordingly, the request for a court order directing CardConnect to release the residuals it is currently holding to Boost Web is DENIED.

## 2.   *Accounting Claim (Count III of Intervenor Complaint)*

Boost Web also seeks summary judgment on its accounting claim in Count III of the Intervenor Complaint. Doc. No. 23 ¶¶ 38–41. Specifically, the Motion requests that the Court order Wayne Orkin to "account for the $234,941.60 he received from his redirection of CardConnect residuals away from Boost Web and to himself through MKY." Doc. No. 106 at 12–13; see also Doc. No. 130-1 at 7–8. "The existence of a fiduciary relationship is a prerequisite for an equitable accounting claim under Massachusetts law." In re McCabe, 345 B.R. 1, 10 (D. Mass. 2006) (citing Chedd–Angier Prod. Co., Inc. v. Omni Publ'ns Int'l, Ltd., 756 F.2d 930, 937 (1st Cir.1985)). Additionally, "Where the claims asserted are legal in nature and a duty to account does not arise as an equitable matter, an accounting cause of action lies only where the accounts of the parties are 'of such a complicated nature that only a court of equity can satisfactorily unravel them'" Id. (quoting Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478 (1962));

see also In re Allen, No. 17-10436-JEB, 2022 WL 4539516, at *5 (Bankr. D. Mass. Sept. 28, 2022) ("The use of the [accounting] remedy may also be appropriate in limited circumstances 'where the accounts are so complicated that an action at law would not be an adequate remedy.'" (quoting Porter v. Reid, 79 F. Supp. 898, 907 (D. Mass. 1948))). Trial courts have significant discretion in deciding whether to allow an accounting. Porter, 79 F. Supp. at 907.

Wayne Orkin argues that the claim for an accounting is moot because Boost Web and the Alberts have already received through discovery information on the amount of money that Wayne Orkin received through MKY for May, June, and July 2021. Doc. No. 122 at 15. But the Intervenor Complaint and the Motion for Partial Summary Judgment seek more information than that: the Intervenor Complaint asks the Court to "[o]rder Mr. Orkin to account for all funds he received to his account from CardConnect or any other Boost customer and all disbursements from that account, including the purposes of any related expenses." Doc. No. 23 at 7. In other words, Boost Web seeks a detailed accounting of what Wayne Orkin did with the money he received—the "disbursements" and "purposes of any related expenses." Id. Although Wayne Orkin admits that "by the time of his deposition on September 20, 2021, Wayne Orkin had spent all but $5,000 to $10,000 of those residuals" he received through MKY, Doc. No. 122 at 6, he has not demonstrated to the Court that he has supplied detailed information establishing on what he spent those residuals. Therefore, his argument on mootness fails on summary judgment.

Wayne Orkin also argues that the accounting claim fails as a matter of law because Boost Web (1) fails to allege that he was in a fiduciary relationship with Boost Web, and (2) the nature of the accounts in dispute are not so complicated that only a court in equity can unravel them. Doc. No. 122 at 13–14. "The determination of whether a fiduciary relationship exists is not always obvious and is generally a question of fact." Colella v. Children's Hosp. Corp., No. CV

14-11687-LTS, 2014 WL 12581775, at *4 (D. Mass. Nov. 4, 2014) (citing McAdams v. Mass.

Mut. Life Ins., 391 F.3d 287, 303 (1st Cir. 2004)). A fiduciary relationship arises when one party

reposes trust and confidence in the integrity and fidelity of another and that trust and confidence

is accepted. See, e.g., Estate of Moulton v. Puopolo, 5 N.E.3d 908, 921 (Mass. 2014); Colella,

2014 WL 12581775, at *5; Fernandes v. Havkin, 731 F. Supp. 2d 103, 110 (D. Mass. 2010).[10]

As described in detail in the discussion of Wayne Orkin's actual authority on behalf of

Boost Web above, the parties have put forth competing evidence about Wayne Orkin's position

in Boost Web. See supra Section III.A.1. Whether Wayne Orkin was in a fiduciary relationship

with Boost Web depends on his role in Boost Web and is thus a disputed question of fact that the

Court cannot determine on summary judgment. However, even if such a fiduciary relationship

does not exist here, meaning that a "duty to account does not arise as an equitable matter," an

accounting is still appropriate in this case because "the claims asserted are legal in nature" and

"the accounts of the parties are 'of such a complicated nature that only a court of equity can

satisfactorily unravel them.'" In re McCabe, 345 B.R. at 10 (quoting Dairy Queen, 369 U.S. at

478). Wayne Orkin owns or is otherwise involved in numerous different businesses, and the

record demonstrates a complicated history of assignments and transfers of funds between the

businesses as well as the mixed use of business credit cards and accounts for business and

---

[10] Wayne Orkin cites case law stating that employers generally do not owe fiduciary duties to
their employees. Doc. No. 122 at 13–14. However, the more relevant question here is whether
there were fiduciary duties owed in the opposite direction by someone who might have been an
employee (Wayne Orkin) to a corporation that might have been his employer (Boost Web). It is
possible that, even if he was not an officer or director of Boost Web, Wayne Orkin and Boost
Web were in a fiduciary relationship, as "[e]mployees occupying a position of trust and
confidence owe a duty of loyalty to their employer and must protect the interests of the
employer." Chelsea Indus., Inc. v. Gaffney, 449 N.E.2d 320, 326 (1983) (holding that trusted
executives composing virtually all of the management of a division of a corporation owed
fiduciary duties to the corporation despite not being officers or directors of the corporation).

personal purposes. See, e.g., Doc. No. 111. In a deposition, Wayne Orkin stated that the funds he

redirected away from Boost Web were deposited into a People's United Bank account under his

control, but that account also included "[i]ncome from other revenue" including "alcohol" and

"[o]ther business outside of—you know, just other business." Id. at 29–30. He further stated that

a portion of the funds in that account are spent on his own personal expenses. Id. at 30. An

accounting is necessary to unravel what portion of the Boost Web funds in that account were

spent on Boost Web expenses, other businesses, and Wayne Orkin's personal expenses. See

Butler v. Moore, No. CIV. 10-10207-FDS, 2015 WL 1409676, at *99 (D. Mass. Mar. 26, 2015)

(granting an accounting "to ascertain what funds and other assets were transferred between the

various entities, and otherwise to identify what assets properly belong to the debtor" where the

parties "engaged in a pattern of transferring funds and other assets between entities without

regard for corporate formalities and maintaining appropriate business and financial records").

The Motion for Summary Judgment on Boost Web's accounting claim, Count III in the

Intervenor Complaint, is ALLOWED.

### 3. Defamation Claim (Count I in Original Complaint)

Count I in the original Complaint states a defamation claim by Wayne Orkin against Lisa

Albert alleging that "Lisa published a defamatory statement through the mail and over the phone

concerning Wayne's treatment of Arthur to Arthur's medical providers and to a Massachusetts

agency, stating that Wayne was committing elder abuse and/or negligence concerning Arthur."

Doc. No. 1-1 ¶ 60. Wayne Orkin only opposes Lisa Albert's request for summary judgment in

her favor on this claim on one ground. Doc. No. 122 at 17. He argues that an imputation of a

crime is defamatory per se, Lynch v. Lyons, 20 N.E.2d 953, 954–56 (Mass. 1939), and that here,

a jury could find that the letters Lisa Albert sent impute that Wayne Orkin committed a crime.
Doc. No. 122 at 17.

Wayne Orkin admits that he suffered no economic losses from Lisa Albert's letters to
Arthur Orkin's doctors. Doc. No. 125 ¶ 15. It is true that "statements that charge the plaintiff
with a crime" are one of four types of statements that are actionable as defamation without proof
of economic loss. Alharbi v. Theblaze, Inc., 199 F. Supp. 3d 334, 351 (D. Mass. 2016) (internal
quotation marks omitted) (quoting Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 511 (Mass.
2003)). However, the Court has reviewed the correspondence regarding Arthur Orkin's care filed
in the record, Doc. No. 107-1 at 2–7; Doc. No. 96-4 at 74–78, which is the only evidence
supporting the alleged imputation of a crime. The Court concludes that no reasonable jury could
find that the correspondence constitutes *per se* defamation. Wayne Orkin cites to five letters,
each identical in content and addressed to a different one of Arthur Orkin's doctors at UMass
Memorial. Doc. No. 107-1 at 2–7; Doc. No. 96-4 at 74–78; Doc. No. 122 at 17. The letters state
that Wayne Orkin had assumed the role of Arthur Orkin's "primary care-taker," raise concerns
about whether Arthur Orkin was receiving appropriate care based on several recent emergency
room visits and numerous other alleged facts about her father's experiences, and assert that
UMass Memorial (Arthur Orkin's primary healthcare provider) had "ethical and moral
responsibilities to their patient and [to] take reasonable steps to ensure that he is being cared for
in the appropriate manner." Doc. No. 107-1 at 2–7; Doc. No. 96-4 at 74–78. The letters also note
that Arthur Orkin had been "making drastic legal and financial decisions that could be suspect to
undue influence, considering his mental state, medications, and his other medical conditions,"
and a couple paragraphs later they each conclude by stating, "[t]his letter serves as a notice that

UMass Memorial has been appraised of a situation in which negligence and elder abuse may be apparent." Doc. No. 107-1 at 2–7; Doc. No. 96-4 at 74–78.

The letters do not accuse Wayne Orkin of undue influence, negligence, or elder abuse. They raise concerns about the possibility that such improper activities may be occurring, and they note that Wayne Orkin is Arthur Orkin's primary care-taker, but they do not allege that Wayne Orkin is Arthur Orkin's only care-taker or attribute the possible improper activities to Wayne Orkin. See Doc. No. 107-1 at 2–7; Doc. No. 96-4 at 74–78. "[A] statement cannot be defamatory if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." Piccone v. Bartels, 785 F.3d 766, 771 (1st Cir. 2015) (quoting Gray v. St. Martin's Press, Inc., 221 F.3d 243, 248 (1st Cir. 2000)). Lisa Albert's statements that negligence and elder abuse "may be apparent" and that Arthur Orkin's decisions "could be suspect to undue influence" are clearly theories or surmises rather than objective assertions that Wayne Orkin had committed a crime, especially since Lisa Albert states in the letter that she has been living in a different state than Arthur and Wayne Orkin for months.[11]

For the reasons stated above and the further reasons set forth in the Alberts' and Boost Web's Motion and reply brief, Doc. No. 106 at 13–15; Doc. No. 130-1 at 8–9, as well as Wayne

---

[11] The analogous case of Saad v. American Diabetes Association is instructive. There, the court had "little trouble concluding that the ADA's Expression of Concern [was] not actionable for defamation" when "[t]he ultimate conclusion of the Expression of the Concern was merely that, based on the inaccuracies found by the Inquiry Commission, the ADA 'remains concerned about the reliability and credibility of some of the data presented' in Dr. Saad's articles." Saad v. Am. Diabetes Ass'n, 123 F. Supp. 3d 175, 178–79 (D. Mass. 2015). In support of its holding, the court noted that the document at issue document "plainly disclose[d] the non-defamatory facts undergirding its opinion," and that the statement was "measured and professional in its tenor." Id. at 178. The same factors support this Court's finding that Lisa Alberts letters are not actionable for defamation.

Orkin's failure to raise any other objections to summary judgment on Count I, the Motion for Summary Judgment on Count I in the original Complaint is ALLOWED.

4. *Intentional Interference Claims (Counts X and XI in Original Complaint)*

The Alberts also seek summary judgment on Counts X and XI in the original Complaint. Doc. No. 106 at 15–17; Doc. No. 1-1 ¶¶ 104–115. Under Massachusetts law, a claim for intentional interference with advantageous business relationships requires the proof of four elements: "(1) a business relationship for economic benefit with a third party; (2) the defendant's knowledge of that relationship; (3) the defendant's interference with that relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff's loss of advantage directly resulting from defendants' improper conduct." Primarque Prod. Co. v. Williams W. & Witt's Prod. Co., No. CV 15-30067-TSH, 2015 WL 10097150, at *5 (D. Mass. Nov. 18, 2015) (quoting Baxter, Inc. v. Landry, No. 0400395, 2007 WL 3015098, at *3 (Mass. Super. Apr. 2, 2007), aff'd, 903 N.E.2d 607 (Mass. App. Ct. 2009)).[12]

Count X in the original Complaint alleges that "Wayne had a business relationship for economic benefit with Wells Fargo Bank in that he was an Authorized Signor of the Boost Web Wells Fargo Account" and that Lisa Albert interfered with that relationship by removing Wayne Orkin as an authorized signor on that account. Doc. No. 1-1 ¶¶ 104–109. Wayne Orkin does not appear to oppose the Alberts' request for summary judgment on Count X. His opposition to the present Motion includes a section titled "There are Issues of Material Fact as to Plaintiff's

---

[12] Wayne Orkin's Complaint advances two claims for "intentional interference with advantageous business relationship" (Counts X and XI), Doc. No. 1-1 at 14, while both parties' filings on the present Motion refer to these claims as claims for "tortious interference with advantageous business relationship." Doc. No. 106 at 15–17; Doc. No. 122 at 15–16. No party has suggested that this difference reflects anything other than use of a different word addressing the same claim.

Tortious Interference Claims," but that section proceeds to discuss facts related to Wayne Orkin's relationship with CardConnect (covered by Count XI discussed below) without anywhere mentioning Wayne Orkin's relationship with Wells Fargo. Doc. No. 122 at 15–16. Nowhere does Wayne Orkin cite to facts or advance an argument challenging the Alberts' contention that Wayne Orkin lacked a sufficient relationship with Wells Fargo to support this claim. Thus, he waived his opposition as to this point.

In any event, on this claim he loses on the merits. Wayne Orkin's signature authority on Boost Web's Wells Fargo bank account does not constitute a "business relationship for economic benefit" that could be subject to a claim for intentional interference between Wayne Orkin and Wells Fargo because Wells Fargo's relationship was not with <u>Wayne Orkin</u>. Furthermore, Wayne Orkin has not presented any evidence that the interference with his alleged relationship with Wells Fargo through termination of his signature authority caused him a "loss of advantage" under the fourth element of the claim. In light of Wayne Orkin's failure to satisfy these required elements, the Court need not discuss the Alberts' other arguments regarding this claim. The Alberts' Motion for Summary Judgment on Count X is ALLOWED.

Count XI in the original Complaint alleges that Lisa Albert interfered with Wayne Orkin's business relationship for economic benefit with CardConnect by stating to CardConnect that Wayne was not an officer of Boost Web. Doc. No. 1-1 ¶¶ 110–115. "The 'improper motive' bar is fairly high, requiring a showing of 'actual malice,' which is defined as 'a spiteful, malignant purpose, unrelated to the legitimate corporate interest.'" <u>Primarque Prod. Co</u>, 2015 WL 10097150, at *5 (quoting <u>Comeau v. Town of Webster, Mass.</u>, 881 F.Supp.2d 177, 190 (D. Mass. 2012). In his opposition to the present Motion, Wayne Orkin points to multiple emails sent by Lisa Albert and her attorneys to CardConnect as efforts to "prevent [CardConnect] from

doing business with Wayne Orkin" and suggests that the letters were due to "her malicious intent to harm Mr. Orkin . . . based on her enmity for him because she thought he was influencing her father against her." Doc. No. 122 at 16; <u>see also</u> Doc. No. 96-4 at 86; Doc. No. 108-3 at 2; Doc. No. 108-4 at 2–3. He specifically highlights one email sent by Lisa Albert to "partnercompliance@cardconnect.com" on April 29, 2021. Doc. No. 96-4 at 86; Doc. No. 122 at 16. In that email, Lisa Albert states that she is "President of Boost Web SEO," that Boost Web "ha[s] been experiencing fraudulent activities with a Wayne Orkin, who may have attempted to either access, change, or otherwise alter any arrangements between you (First Data/Card Connect) and Boost Web SEO," and that "[t]his is currently a civil and criminal matter that is being pursued." Doc. No. 96-4 at 86.

Assuming without deciding that the accusations of fraud by and the assertion that a criminal matter is being pursued against Wayne Orkin to CardConnect or any other actions by Lisa Albert are sufficient to preclude summary judgment as to the "improper in motive or means" element of the intentional interference analysis, Wayne Orkin has failed to show any direct evidence of a loss of advantage due to the interference—the fourth required element. His opposition to the Motion for Summary Judgment on this claim argues that Lisa Albert's actions were 'improper in motive or means" but does not explicitly oppose Lisa Albert's arguments about a lack of evidence of a damaging interference or point to any evidence of a loss of advantage. <u>See</u> Doc. No. 122 at 16. The undisputed evidence before the Court suggests that CardConnect was unresponsive for months to Lisa Albert's and her attorney's emails and letters inquiring about why the residuals were not deposited into the Boost Web account, and CardConnect continued to pay the residuals to MKY as Wayne Orkin had directed throughout that time. Doc. No. 125 ¶¶ 22–28. It was not until after CardConnect learned that the redirected

residuals were disputed in this lawsuit that CardConnect ceased paying the residuals to MKY and began holding the residuals. Doc. No. 108-5 at 1–3. CardConnect stated it escrowed the residual funds starting in September 2021 due to the "lawsuit" between the parties disputing these funds and its review of a Court Order in this case in which the "Court made clear" that the dispute over these funds was "one of the primary items at issue" in this lawsuit. Id. Neither this freezing of the residual payments nor any other evidence before the Court demonstrates that Wayne Orkin suffered a loss of advantage in his relationship with CardConnect that resulted from Lisa Albert's allegedly improper comment. Thus, because no reasonable jury could conclude that Wayne Orkin has proven this essential element of the Count XI intentional interference claim, the Motion for Summary Judgment on Count XI of the original Complaint is ALLOWED.

      B.  Wayne Orkin's Cross-Motion for Partial Summary Judgment[13]

        1.  *Conversion Claim (Count I in Intervenor Complaint)*

Wayne Orkin moves for summary judgment on Count I of the Intervenor Complaint: Boost Web's conversion claim. Doc. No. 122 at 19–20. The Court analyzed this same claim above in the section discussing Boost Web and the Alberts' request for a court order directing CardConnect to release the residuals it is currently holding to Boost Web. See supra Section III.A.1. The Court concluded there that viewing the record and drawing all inferences in Wayne Orkin's favor, disputed issues of material fact preclude summary judgment on the Intervenor Complaint conversion claim. See supra Section III.A.1. Here, viewing the record and drawing all inferences in the nonmovant Boost Web's favor, the outcome is no different: the Court denies the

---

[13] This section covers Wayne Orkin's Cross-Motion for Partial Summary Judgment on two claims in Boost Web's Intervenor Complaint. Doc. No. 122 at 17–21. Boost Web is the nonmovant here, and the Court thus views the record in the light most favorable to Boost Web and draws all reasonable inferences in its favor.

request for summary judgment due to disputes of material fact on the same issues discussed above. See supra Section III.A.1.

In his Cross-Motion, Wayne Orkin raises a further argument related to the conversion claim that the Court did not address above. He argues that Boost Web's conversion claim fails as a matter of law because the residuals Boost Web seeks are not "particularly identifiable funds" and because Boost Web did not have possession of the funds before Wayne Orkin allegedly converted them. Doc. No. 122 at 17–19. Under Massachusetts law, the party bringing a claim for conversion "bears the burden of showing that: (1) he or it 'had an ownership or possessory interest in the [allegedly converted property] at the time of the alleged conversion'; (2) [the opposing party] 'intentionally and wrongfully exercised control or dominion over' the owned property; and (3) damages resulted from [the opposing party's] conduct." Neelon v. Krueger, No. CV 12-CV-11198-IT, 2015 WL 4647931, at *2 (D. Mass. Aug. 5, 2015) (quoting Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 (1st Cir. 1993)). The particular funds at issue in the present case are:

- The $234,941.60 in funds that were redirected to MKY and then then routed into a People's United Bank account under Wayne control. See Doc. No. 122 at 6; Doc. No. 125 ¶ 27.

- The residuals that CardConnect is holding that are continuing to accrue over time. See Doc. No. 125 ¶ 29 (stating that as of the end of June 2022, CardConnect held $439,063.16 in residuals).[14]

---

[14] The Court need not decide whether the conversion claim reaches any future residuals not yet held by CardConnect to which Boost Web alleges it is entitled.

All of these monies are identifiable, tangible, and potentially the property of Boost Web when viewing the record and drawing reasonable inferences favorably to Boost Web under the summary judgment standard governing Wayne Orkin's Cross-Motion. Both categories involve "particular funds," not just an "amount of money," to which Boost Web is allegedly entitled. See Leness v. Chang, 100 Mass. App. Ct. 1117 (2021) ("[F]or purposes of conversion, there is a distinction between being entitled to an amount of money and being entitled to particular funds; between the two, only the latter may serve as the basis of a conversion claim."). Additionally, a conversion claim requires the party bringing the claim to show either actual possession or the right to immediate possession or control of the property. See Latimore v. Tompkins, No. CV 14-13378-MBB, 2021 WL 5763011, at *16 (D. Mass. Dec. 3, 2021); In re Halmar Distributors, Inc., 232 B.R. 18, 22 (Bankr. D. Mass. 1999). Thus, Boost Web's alleged legal right to the funds identified above is sufficient to support a claim for conversion even though Boost Web never had actual possession of the funds. Wayne Orkin's Motion for Summary Judgment on Count I of the Intervenor Complaint, the conversion claim, is DENIED.

### 2. *Unjust Enrichment Claim (Count II in Intervenor Complaint)*

Wayne Orkin also moves for summary judgment on Count II of the Intervenor Complaint, Boost Web's unjust enrichment claim. Doc. No. 122 at 19–20. According to the Massachusetts Supreme Judicial Court, "Unjust enrichment is defined as retention of money or property of another against the fundamental principles of justice or equity and good conscience." Sacks v. Dissinger, 178 N.E.3d 388, 397–98 (Mass. 2021) (quoting Santagate v. Tower, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005)). An unjust enrichment claim requires the plaintiff to show, "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of

the benefit under the circumstances would be inequitable without payment for its value."

Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 82 (1st Cir. 2020) (internal quotation marks omitted) (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009), decision clarified on denial of reh'g, 559 F.3d 1 (1st Cir. 2009)); Li v. Teikametrics, Inc., No. CV 21-10275-LTS, 2021 WL 7368819, at *1 (D. Mass. Aug. 20, 2021); Giles v. Ramos, 860 N.E.2d 978 (Mass. App. Ct. 2007). Additionally, "a party with an adequate remedy at law cannot claim unjust enrichment," and "it is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." Tomasella, 962 F.3d at 82–83 (quoting Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017)).

Like the plaintiffs in Tomasella and Shaulis, Boost Web has an adequate remedy at law and therefore may not also claim unjust enrichment. Regardless of whether Boost Web is ultimately successful in proving the required elements of its conversion claim (i.e., regardless of whether the claim is "viable"), the conversion claim is available to Boost Web as a potential remedy at law for the harms it alleges it incurred as a result of Wayne Orkin's redirection of the funds. See Tomasella, 962 F.3d at 83–84 (affirming dismissal of unjust enrichment claim because "even though [the plaintiff] did not succeed on her Chapter 93A, fraudulent misrepresentation, and breach of contract claims (i.e., even though they were not viable), they provided her with 'an adequate remedy at law' (i.e., they were available to her), and that alone 'prohibits a claim for unjust enrichment.'" (quoting Shaulis, 865 F.3d at 16)). Accordingly, Wayne Orkin's Motion for Summary Judgment on Count II, the unjust enrichment claim, is ALLOWED.[15]

---

[15] The Court need not reach Wayne Orkin's argument that Boost Web does not allege that Boost Web conferred a benefit on Wayne Orkin, and thus Boost Web fails to plead the first element of an unjust enrichment claim. Doc. No. 122 at 19–20.

IV.   <u>CONCLUSION</u>

Accordingly, the Alberts and Boost Web's Motion for Partial Summary Judgment (Doc. No. 105) is DENIED as to the request for release of funds currently held by third-party CardConnect but ALLOWED in all other respects. Plaintiff/Intervenor-Defendant Wayne Orkin's Cross-Motion for Partial Summary Judgment (Doc. No. 122) is DENIED as to the conversion claim but ALLOWED as to the unjust enrichment claim.


SO ORDERED.


 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge