UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WAYNE ORKIN )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LISA SUE ALBERT )<br>)<br>Defendant )<br>)<br>and )<br>)<br>BOOST WEB SEO, INC. )<br>)<br>Intervenor-Plaintiff )<br>)<br>v. )<br>)<br>WAYNE ORKIN )<br>)<br>Intervenor-Defendant. )<br>) | Civil No. 4:21-cv-40060-MRG |

### MEMORANDUM AND ORDER ON CONTEMPT OF INTERVENOR-DEFENDANT, WAYNE ORKIN

**GUZMAN, J.**

This matter is again before the Court as the Court has held Intervenor-Defendant Wayne Orkin ("Mr. Orkin" or "Wayne") in civil contempt for his repeated actions to undermine and controvert explicit court orders. On May 13, 2024, the Court declared Mr. Orkin to be in contempt of court, [ECF No. 238], and a contempt hearing was held on May 28, 2024 to provide defense counsel the opportunity to object and to determine sanctions should they be warranted, [ECF No. 248]. At that hearing, the Court confirmed its finding of Mr. Orkin in contempt of court and sanctioned him $8,000 as a fine to the Court and $12,000 in attorney's fees to counsel for

1

Intervenor-Plaintiff Boost Web SEO, Inc. ("Boost Web"), with written order to issue. [Id.]. This memorandum and order summarizes the Court's statements at the contempt hearing, and further sets forth the Court's reasoning.

## I.     BACKGROUND

### A. Pre-Trial and Bench Trial Findings

The facts of this case are complicated and lengthy and the Court incorporates by reference the factual summary contained in the Amended Memorandum of Decision ("Amended Decision") in the case. [ECF No. 204]. For the purposes of this Order, the relevant facts are as follows.

This case concerns relationships among players in the credit card processing industry. Financial Transaction Services, Inc. ("FTS") was a credit card processing platform for which agents sold FTS products and services to merchants in exchange for residual income based on fees paid by the merchants. Prior to 2014, Mr. Orkin operated a company called Pass Thru Merchant Services ("PTMS"), which earned residuals from credit card transactions processed by FTS. In 2013, FTS rebranded as CardConnect, and became an in-house independent sales organization responsible for acquiring agents, like PTMS, to sell credit card processing products and services to merchants. Boost Web is a Florida corporation specializing in search engine optimization, and merchant credit card processing. Lisa Albert ("Ms. Albert" or "Lisa") incorporated Boost Web in Florida in 2013, at the request of her brother, Mr. Orkin.  In January 2014, Mr. Orkin notified CardConnect that he no longer wanted residuals from PTMS deposited into PTMS's account and sought to arrange deposits to Boost Web instead. On January 23, 2014, FTS/CardConnect and Wayne Orkin signed a Consent to Assignment Agreement for PTMS to assign to Boost Web "all right, title, and interest to residuals and compensation under the Assignor ISO Agreement."  [Trial Ex. 13]. It is undisputed that all residuals from credit card transactions for all merchants originated

by PTMS before the assignment and all merchant accounts originated after the assignment were deposited in the Boost Web Wells Fargo account from January 2014 until April 2021.

Until April 2021, Wayne and Lisa had an informal arrangement that he would handle the day-to-day affairs of Boost Web while Lisa oversaw administrative duties, such as accounting and tax preparation. There was no agreement as to specific compensation of either Wayne or Lisa, except that Lisa would be compensated when Boost Web became profitable.[1] Additionally, there was no agreement on how personal vs. business expenses would be accounted for or how Wayne might use business assets for personal expenses.

In April 2021, Lisa received a notification that her Capital One personal credit card was beyond the credit limit and running a balance of about $26,000. She had provided Wayne authority to use that card for Boost Web expenses, but he was incurring costs faster than Boost Web revenue in the Wells Fargo account could cover. Many of the expenses did not appear to be Boost Web business expenses but rather personal expenses for Wayne. Concerned about Wayne's financial activity, on or about April 26, 2021, Lisa terminated Wayne's access to her Capital One credit card and his signature authority on the Wells Fargo Boost Web bank account. She also stopped certain payments from the Wells Fargo account that Wayne had initiated. Additionally, on April 29, 2021, Lisa contacted CardConnect about her concerns about Wayne's "fraudulent activities" and indicated that Wayne "is not an authorized representative of Boost Web SEO and any such attempted activity by him will be further pursued in court." [Trial Ex. 138].

In retaliation for Lisa's actions, around May 21, 2021, Wayne contacted CardConnect with instructions to re-direct the assignment of residuals originating from PTMS (which were subject

---

[1] At the time of publication of the Amended Decision, Lisa had never received compensation for her role at Boost Web.

to the 2014 Consent to Assignment Agreement with Boost Web) from Boost Web to another company, MKY FTS Sales LLC ("MKY"). MKY is owned by Laith Yaldoo, a former employee of CardConnect and Wayne's "long time friend." [Trial Ex. 56]. This new redirect agreement was signed on June 3, 2021 and CardConnect began depositing the residuals that formerly went to Boost Web to MKY. The funds were then transferred to another personal account controlled by Wayne. Additionally, on May 28, 2021, Wayne and his father, Arthur Orkin, sued Lisa and her son, Ian Albert, asserting claims for defamation, breach of fiduciary duty, breach of contract, and unjust enrichment (among others) stemming from Lisa's actions to cut off Wayne's access to Boost Web funds and from disputes around Arthur Orkin's care. [See ECF No. 1].

On August 24, 2021, Boost Web sent a letter through counsel to the Executive Vice President and Chief Legal Officer of CardConnect's parent company, Fiserv, asserting Boost Web's entitlement to the residuals and noting "what appears to be troubling conduct by certain employees at CardConnect, LLC in supporting redirection of funds from Boost Web by a former salesman, Wayne Orkin." [Trial Ex. 75]. The letter concludes, "[i]f the Court agrees that Wayne embezzled these funds and discovery reveals that CardConnect personnel knowingly assisted Wayne in doing so, Boost Web will seek to hold CardConnect liable for any funds that it is unable to recover from Wayne." [Id.] Starting in August 2021, CardConnect ceased paying residuals to MKY and began holding in escrow the residuals derived from merchants originated under the PTMS agent codes until the legal dispute between the parties concluded.

After nearly three years of contentious litigation, the Court entered a Memorandum of Decision on March 20, 2024 finding against Plaintiff Wayne Orkin on all counts of his principal case against his sister, Lisa Albert. [ECF No. 195]. Additionally, the Court ruled in favor of Intervenor-Plaintiff Boost Web on its conversion claim against Mr. Orkin. [Id.] The Court issued

the Amended Decision on April 11, 2024, making non-material changes to the language of the original Memorandum of Decision. [ECF No. 204].

The Amended Decision included the following language relating to the residuals held by CardConnect:

"ALL FUNDS HELD BY CARDCONNECT SHOULD BE RELEASED TO BOOST WEB" [ECF No. 204 at 38].

"The Court finds by a preponderance of the evidence, that the residuals payable to Boost Web under the Assignment Agreement for April 2021 and thereafter belong to Boost Web." [Id.]

"[T]he disputed residuals being held by CardConnect and any future residuals payable under the Assignment Agreement belong to Boost Web and should be paid into Boost Web's Wells Fargo account, into which CardConnect paid them without objection from January 2014 to April 2021, or as directed by Boost Web." [Id. at 38-39].

"The Court declares that the funds being held by CardConnect representing residuals from merchant accounts payable to Boost Web since August 2021 belong to Boost Web." [Id. at 39].

### B. Post-Trial Conduct

On April 19, 2024, the last day of the automatic stay of the original judgment, Mr. Orkin filed a Notice of Appeal for "all appealable orders and judgments of this Court in this case" and a Motion to Stay Execution of such judgments. [ECF Nos. 208, 211]. On the same day, Mr. Orkin, through Attorney Tauches, contemporaneously contacted CardConnect claiming that "it is highly likely that Mr. Orkin will be successful in his Appeal. Thus, neither parties' claims to [the

residuals] have been finally adjudicated by the Court." [CardConnect Mot. Leave Deposit Funds, ECF. 218, Ex. A]. Further, on April 26, 2024, Attorney Tauches contacted CardConnect again, reiterating his position that "neither parties' claims to those funds have been finally adjudicated by the Court." [Id.]

While the Motion to Stay was pending, on April 25, 2024, Mr. Orkin, individually and purportedly on behalf of Boost Web, also filed a complaint[2] in Hillsborough County, Florida, against Ms. Albert and Boost Web seeking a declaratory judgment that Mr. Orkin owned 100 percent of Boost Web and temporary and permanent injunctive relief to preserve Boost Web's assets and obtain an accounting. He did not notify the Florida court that this Court had already adjudicated the issues he sought to relitigate or that the federal case even existed. [TRO Hr'g Tr., 4:23-5:17, ECF No. 245].

On April 29, 2024, Mr. Orkin *again* contacted CardConnect and asserted his demand that it not disburse the residual funds. [ECF No. 218, Ex. B]. Citing Attorney Schwartz's opposition to the Motion to Stay, Attorney Tauches wrote "the Order of the Court is not clear even to Mr. Schwartz that CardConnect must disburse the funds it is holding to Boost Web at this time." [Id.].

CardConnect felt so pressured by Mr. Tauches that on April 30, 2024, it filed a Motion for Leave to Deposit Funds with the Court notifying the Court of Mr. Orkin's persistent "demand[s]," and pleading with the Court to discharge it from any and all potential liability relating to the disbursement of the funds, referring to itself as "a mere innocent stakeholder." [ECF No. 218].

---

[2] *Wayne Orkin individually and on behalf of Boost Web SEO, Inc. v. Lisa Albert and Boost Web SEO, Inc.* Case No. 24-CA-003401 (13th Judicial District, Hillsborough County) (hereinafter, the "Florida Action"). A copy of the complaint in the Florida Action was brought to the Court's attention by CardConnect, LLC on May 3, 2024, in its notice of compliance with the Court's instruction that it disburse funds to Boost Web. [See ECF No. 229-2 at 6-14 (the "Florida Complaint")].

6

On May 2, 2024, this Court entered an Amended Judgment awarding Boost Web $169,691.87 in prejudgment interest to be added to the $638,769.51 awarded for damages resulting from Mr. Orkin's conversion. [ECF No. 222]. This Court also declared that "the funds being held by CardConnect representing residuals from merchant accounts payable to Boost Web since August 2021 belong to Boost Web, including the held amount of $994,162.25 and all future residuals." [Id.] Also on May 2, 2024, the Court held a hearing on Mr. Orkin's Motion to Stay and CardConnect's Motion for Leave to Deposit Funds. [ECF No. 219]. At that hearing, Attorney Tauches discussed his multiple letters and emails to CardConnect where he requested that CardConnect hold the residuals during the pendency of Mr. Orkin's appeal. [Mot. Stay Hr'g Tr., 4:15-6:2, ECF No. 230]. In response, the Court stated, "[y]our letter to CardConnect was not only inappropriate, it misstated what we have as a factual basis, a [] verdict against your client. It is not the plaintiff counsel's place to order [a] nonparty in this case holding monies that were the monies at issue to do anything with them." [Id., 6:5-10].

Later in the day on May 2, 2024, the Court entered an electronic order denying without prejudice Mr. Orkin's Motion to Stay and ruling that Mr. Orkin would need to post a bond in the amount of $850,339.68 to extend the automatic stay beyond June 1, 2024. [ECF No. 225]. The Court also entered an electronic order denying CardConnect's Motion for Leave to Deposit Funds and again ordering CardConnect to "immediately transfer the residuals it is holding to Boost Web in the manner directed by Boost Web." [ECF No. 226].

That same day, "approximately 22 minutes after the Court's order," attorneys from the Navarro law firm, purportedly representing Mr. Orkin "individually" and "on behalf of Boost Web SEO, Inc.," sent a letter to CardConnect demanding that CardConnect continue to hold in reserve the $994,162.25 of funds that belong to Boost Web pending resolution of the Florida Action. [ECF

7

Nos. 229; 229-1].[3] Moreover, Mr. Orkin threatened that, should CardConnect disburse the funds to Boost Web, he "will seek to hold CardConnect liable for any funds it is unable to recover." [Id.] The next day, on May 3, 2024, CardConnect filed a Notice of Compliance with the Court's electronic order and paid out the reserved funds to Boost Web's counsel on May 7, 2024. [ECF No. 229].

On the same day, May 3, 2024, Mr. Orkin filed in the Florida Action an "Emergency Motion for Temporary Injunction" seeking to prevent Lisa Albert and Boost Web from using any funds received from CardConnect to repay herself or pay creditors. [ECF No. 233-1]. In response, on May 10, 2024, Boost Web and Lisa Albert filed a Motion for Temporary Restraining Order ("TRO") to enjoin Mr. Orkin from relitigating in Florida the issues this Court already determined. [ECF No. 232]. The Court held a hearing on that motion on May 13, 2024, and ordered that Mr. Orkin would be held in contempt for his actions relating to his demands to CardConnect and his endeavor to subvert this Court's orders in the Amended Decision by relitigating the same issues in the Florida Action. [ECF No. 238]. The Court issued the TRO on May 14, 2024, [ECF No. 242], and set a further hearing to determine Mr. Orkin's contempt sanctions. The contempt hearing was held on May 28, 2024 and the Court sanctioned Mr. Orkin $8,000 in a fine to the Court – $2,000 for each of the four times he contacted CardConnect to demand it withhold the residual funds from Boost Web – and $12,000 in attorney's fees to counsel for Boost Web, due within 30 days. [Contempt Hr'g Tr., 24:7-10, ECF No. 252; ECF No. 248]. The Court indicated this written decision would follow.

---

[3] In the alternative, Mr. Orkin's Florida counsel implored CardConnect to file an interpleader action in Case No. 24-CA-00340 and deposit the funds with the Florida court. [Id.]

## II. LEGAL STANDARD

Article III courts wield "an array of 'inherent powers' in performing their case-management function." United States v. Kouri-Perez, 187 F.3d 1, 7 (1st Cir. 1999) (quoting United States v. Horn, 29 F.3d 754, 759 (1st Cir. 1994)). "A district court's authority to issue a contempt order derives from its inherent power to 'sanction . . . litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of [case] proceedings.'" AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 420, 426 (1st Cir. 2015) (quoting Kouri-Perez, 187 F.3d at 7). Civil contempt is generally a "forward-looking penalty" meant to coerce compliance of a court order rather than punish past noncompliance; however, "a civil contempt sanction may evidence a punitive flavor." Id. (citation omitted). Indeed, "in addition to nudging a party to comply with a past court order, a district court may also utilize sanctions to compensate [a] complainant for harms suffered as a result of the contempt and to reinforce the court's own authority." Id. (citing Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 78 (1st. Cir. 2002)).

To hold a party in civil contempt, the Court must find by clear and convincing evidence that: "(1) the alleged contemnor had notice that he was within the court's ambit, (2) the order was clear and unambiguous, (3) the alleged contemnor had the ability to comply with the order, and (4) the order was violated." Rivera Molina v. Casa La Roca, LLC, No. 21-1004 (GAG-GLS), 2021 U.S. Dist. LEXIS 234370, at *10 (D.P.R. Sep. 16, 2021) (citing United States v. Saccoccia, 433 F.3d 19, 26-27 (1st Cir. 2005)). The First Circuit has made clear that good faith is not a defense to civil contempt. Goya Foods, 290 F.3d at 76 ("An act does not cease to be a violation of . . . a decree merely because it may have been done innocently.").

The Court has broad discretion in determining the appropriate coercive remedy upon a finding of civil contempt. Rivera Molina, 2021 U.S. Dist. LEXIS 234370, at *9-10 (citing Brown

9

v. Colegio, 765 F. Supp.2d 133, 138 (D.P.R. 2011); Goya Foods, 290 F.3d at 21. The Court "must fashion sanctions that will ensure compliance with the Court's orders and at the same time correct some of the damage done by their violations." Id. (citation omitted). "A monetary sanction assessed for the purpose of compensating the complainant for losses sustained by reason of the contemnor's acts, as well as the imposition of attorneys' fees and costs, are within the universe of permissible sanctions for civil contempt." Id. at 10 (citation omitted); Goya Foods, 290 F.3d at 78.

Given the Court's "awesome civil and criminal contempt powers," there are important safeguards to protect the rights of a person charged with contempt; however, the trial court's ultimate finding on contempt is reviewed for abuse of discretion. Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 15-16 (1st Cir. 1991). This standard is "administered flexibly, with due regard for the circumstances" and reflects respect for the trial court's discretion. Id. (citing Langton v. Johnston, 928 F.2d 1206 (1st Cir. 1991)).

### III.  DISCUSSION

Mr. Orkin's actions must be viewed together to understand his record of contemptuous behavior in this Court. The current contempt proceedings trace back to when the Court issued the Amended Decision on April 11, 2024. [ECF No. 204]. Drawing from the excerpts quoted in the Background section above, *supra*, it was abundantly clear that the residual funds that CardConnect was holding in escrow belonged to Boost Web and that CardConnect should immediately transfer the funds to Boost Web. [See id. at 38-39]. Mr. Orkin's assertion to CardConnect, made through Attorney Tauches, on April 19, 2024 and April 26, 2024 that "neither parties' claims to [the residuals] have been finally adjudicated by the Court" was disingenuous and misleading. [CardConnect Mot. Leave Deposit Funds, ECF. 218, Ex. A]. On April 29, 2024, Mr. Tauches again volleyed Mr. Orkin's demands at CardConnect, saying the Court's order was not "clear." [Id., Ex.

10

B]. While Mr. Orkin's appeal of the Amended Decision is pending in the First Circuit Court of Appeals, the "Court" Mr. Tauches refers to in his correspondence is *this* Court, not the Court of Appeals. And this Court definitively determined that Boost Web owns the residual funds and that CardConnect should accordingly transfer them to Boost Web. Further, this point was reiterated on May 2, 2024 when the Amended Judgment was issued, [ECF No. 222], and again at a hearing that same day. Mr. Orkin was present for the hearing and heard the Court's order. But still, Mr. Orkin persisted. Within minutes of the electronic order being docketed following the Court's hearing, Mr. Orkin had his Florida attorneys from the Navarro law firm threaten legal action against CardConnect should it follow the Court's order and disburse the funds to Boost Web. [ECF No. 229-1].

Regarding the Florida Action, the Court views Mr. Orkin's lawsuit as nothing other than an attempt to play "judicial hopscotch" and get another bite at the apple with a different judge because Mr. Orkin did not like the outcome in his case before this Court. Moreover, Mr. Orkin's secretive manner of relitigating the claim indicates further contempt for the Court. Mr. Orkin did not notify this Court or the Florida court about the competing actions. A copy of the complaint in the Florida Action was brought to the Court's attention by CardConnect on May 3, 2024, in its notice of compliance with the Court's instruction that it disburse funds to Boost Web. [See ECF No. 229-2 at 6-14]. The Florida Complaint asserts all the same core allegations regarding control of Boost Web and Mr. Orkin's role with Boost Web that this Court considered and rejected in this case, without any reference to this Court's Amended Memorandum of Decision. Compare Florida Complaint at ¶¶ 6-20; 29-37 with Amended Memorandum of Decision [ECF No. 204 (Principal Case Principal Findings of Fact ("PFF") ¶¶ 1-14); (Intervenor Case Intervenor Findings of Fact ("IFF") ¶¶ 7-16)]. The fact that Mr. Orkin's Florida attorneys emphasized the existence of the

11

Florida Action in their emails threatening legal action against CardConnect shows that the Florida lawsuit is intertwined with Mr. Orkin's contemptuous attempts to subvert the Court's orders to CardConnect. [See ECF No. 229-1].

Further, Mr. Orkin's conduct in the Florida Action demonstrates his abuse of the legal system to further harass Boost Web and Lisa Albert. For example, in the Florida Action, Mr. Orkin filed for an emergency injunction to prohibit Lisa Albert and Boost Web from using any funds received from CardConnect the same day that CardConnect filed a notice of compliance in this Court that it was distributing the funds to Boost Web. [ECF No. 233-1; ECF No. 229]. In response, Boost Web and Ms. Albert felt compelled to move for a TRO and later a permanent injunction to enjoin Mr. Orkin from prosecuting his case against them in Florida, incurring substantial legal costs in the process.[4] [ECF Nos. 232, 250]. These costs are in addition to those Boost Web incurred in seeking to secure the Court's judgment after it was pronounced.

Turning to the four elements that the Court must find to enter an order of civil contempt,[5] first, Mr. Orkin had notice that he was within the Court's ambit because he is a party to the case and the subject of a final judgment. Second, the Amended Decision was clear and unambiguous that the residuals belong to Boost Web, that CardConnect should disburse them to Boost Web, and that Lisa Albert is entitled to all of Boost Web's assets as the company's incorporator and director.[6] [See ECF No. 204; TRO Order, ECF No. 242]. Additionally, at the hearing on May 2, 2024, Mr.

---

[4] The Court granted the motion for a TRO on May 14, 2024. [ECF No. 242]. The motion for a permanent injunction has been heard at oral argument, and the Court took the motion under advisement. No decision on the permanent injunction has been issued yet.

[5] Rivera Molina, 2021 U.S. Dist. LEXIS 234370, at *10 (citing Saccoccia, 433 F.3d at 26-27).

[6] Even if Mr. Orkin filed the Florida Action in good faith rather than in an attempt to subvert this Court's rulings, good faith is not a defense to civil contempt. Goya Foods, 290 F.3d at 76.

Orkin received a warning that his overtures to CardConnect must cease, yet his Florida counsel threatened CardConnect with legal action the same day. Third, Mr. Orkin had the ability to comply with the order by paying the judgment and not interfering with CardConnect's efforts to pay out the residuals to Boost Web. Fourth, Mr. Orkin violated the judgment in the Amended Decision by harassing CardConnect in an attempt to coerce it to defy the Court's orders and by filing an almost identical lawsuit in Florida to undermine this Court's judgments. The Court finds all of the above by clear and convincing evidence. In addition to counsels' remarks at the various post-trial hearings in this case, there is a substantial paper trail of filings and correspondence from Mr. Orkin that evidences his actions.

## IV.     **CONCLUSION**

Mr. Orkin has engaged in a pattern of contemptuous behavior to the Court and conduct that rises to the level of harassment of a non-party in this action. His persistent refusal to obey court orders and his actions to covertly undermine the judgment of this Court through the Florida Action call for a higher degree of persuasion. Accordingly, as stated, Mr. Orkin is held in civil contempt of Court and is sanctioned $8,000 in a fine to the Court – $2,000 for each of the four times he contacted CardConnect to demand it withhold the residual funds from Boost Web – and $12,000 in attorney's fees to counsel for Boost Web, due within 30 days of the day it was pronounced through oral order on May 28, 2024. These monetary sanctions are "within the universe of permissible sanctions for civil contempt" and are assessed to compensate Boost Web for losses sustained by reason of Mr. Orkin's acts, to prohibit Mr. Orkin from continuing his contemptuous behavior, and to reinforce the Court's authority. See Rivera Molina, 2021 U.S. Dist. LEXIS 234370, at *10 (citation omitted).

The Court further notes that Mr. Orkin has failed to pay the Amended Judgment, which was due on June 1, 2024. Upon Boost Web's motion, the Court issued a Writ of First Execution on June 12, 2024. [ECF No. 258]. Mr. Orkin is advised that continued failure to pay either the Amended Judgment or the contempt sanction could result in further sanctions. See Almeida-León v. WM Capital Mgmt., No. 3:16-cv-01394-JAW-BJM, 2021 U.S. Dist. LEXIS 152304 (D.P.R. Aug. 12, 2021) (liable parties and their attorneys held in contempt and sanctioned for failure to execute the final judgment against them).

**SO ORDERED.**

Dated: June 24, 2024

                                                          /s/ Margaret R. Guzman
                                                          Margaret R. Guzman
                                                          United States District Judge