**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| X | |
| WAYNE ORKIN and ARTHUR ORKIN : | |
| : | |
| Plaintiffs, : | |
| v. : | CIVIL NO. 4:21-cv-40060-MRG |
| : | |
| LISA SUE ALBERT and IAN ALBERT : | |
| : | |
| Defendants : | |
| and : | |
| : | PERMANENT INJUNCTION ORDER |
| BOOST WEB SEO, INC. : | |
| : | |
| Intervenor-Plaintiff : | |
| v. : | |
| : | |
| WAYNE ORKIN : | |
| Intervenor-Defendant. : | |
| X | |

Intervenor-Plaintiff Boost Web SEO, Inc. ("Boost Web") has moved this Court for a permanent injunction to prevent Intervenor-Defendant Wayne Orkin and anyone acting in concert with him from filing any action seeking to obtain control of Boost Web or interfere with Boost Web's use of funds paid to it by Order of this Court. [ECF No. 250]. The Court previously entered a temporary restraining order ("TRO") providing for the above requested relief on May 14, 2024. [ECF No. 242]. For the reasons set forth below, this Court converts the temporary restraining order to a permanent injunction and enjoins Mr. Orkin from prosecuting any action, apart from appropriate appellate review in the First Circuit, that purports to relitigate the issue of ownership of Boost Web or any other issue that was decided by this Court's Amended Memorandum of Decision [ECF No. 204] and further explained in its decision on Non-Party CardConnect, LLC's Motion for Leave to Deposit Funds.  [ECF No. 226].

## FACTUAL BACKGROUND[1]

On March 20, 2024, this Court entered a Memorandum of Decision finding against Plaintiff Wayne Orkin on all remaining counts, including Count IV for Breach of Fiduciary Duty against Defendant Lisa Albert, and for Intervenor-Plaintiff Boost Web on its conversion counts against Mr. Orkin.  [ECF No. 195].  The Court issued an Amended Memorandum of Decision on April 11, 2024, making non-material changes to the language of the original Memorandum of Decision. [ECF No. 204].  Mr. Orkin noticed his appeal on April 19, 2024.  [ECF No. 208].  Mr. Orkin also moved to stay execution on the Court's judgment for the benefit of Boost Web on April 19, 2024. [ECF No. 211].  While the Motion to Stay was pending, on April 25, 2024, Mr. Orkin, individually and purportedly on behalf of Boost Web, filed a complaint[2] in Hillsborough County, Florida, against Ms. Albert and Boost Web seeking a declaratory judgment that Mr. Orkin owned 100 percent of Boost Web and for temporary and permanent injunctive relief to preserve Boost Web's assets and obtain an accounting. A copy of the complaint in the Florida Action was brought to the Court's attention by Non-Party CardConnect, LLC on May 3, 2024, in its notice of compliance with the Court's instruction that it disburse funds to Boost Web.  [*See* ECF No. 229-2 at 6-14 (the "Florida Complaint")].  The Florida Complaint asserts all the same core allegations regarding control of Boost Web and Mr. Orkin's role with Boost Web that this Court considered and rejected in this case, without any reference to this Court's Amended Memorandum of Decision.  *Compare* Florida Complaint at ¶¶ 6-20; 29-37 *with* Amended Memorandum of Decision [ECF No. 204

---

[1] The Court also incorporates by reference the factual background as detailed in the Amended Memorandum of Decision, [ECF No. 204].

[2] *Wayne Orkin individually and on behalf of Boost Web SEO, Inc. v. Lisa Albert and Boost Web SEO, Inc.* Case No. 24-CA-003401 (13th Judicial District, Hillsborough County) (hereinafter, the "Florida Action")

(Principal Case Principal Findings of Fact ("PFF") ¶¶ 1-14); (Intervenor Case Intervenor Findings of Fact ("IFF") ¶¶ 7-16)].

On May 2, 2024, this Court entered an Amended Judgment awarding Boost Web $169,691.87 in prejudgment interest to be added to the $638,769.51 awarded for damages resulting from Mr. Orkin's conversion. [ECF No. 222]. This Court also declared that "the funds being held by CardConnect representing residuals from merchant accounts payable to Boost Web since August 2021 belong to Boost Web, including the held amount of $994,162.25 and all future residuals." [*Id.*] The Court also held a hearing on Mr. Orkin's Motion to Stay and CardConnect's Motion for Leave to Deposit Funds. [ECF No. 219]. Thereafter, this Court entered an electronic order denying without prejudice Mr. Orkin's Motion to Stay and ruling that Mr. Orkin would need to post a bond in the amount of $850,339.68 to extend the automatic stay beyond June 1, 2024. [ECF No. 225]. This Court also entered an electronic order denying CardConnect's Motion for Leave to Deposit Funds and ordering CardConnect to "immediately transfer the residuals it is holding to Boost Web in the manner directed by Boost Web." [ECF No. 226].

That same day, within minutes of the conclusion of the Court's hearing, Mr. Orkin's Florida counsel sent a letter to CardConnect demanding that CardConnect continue to hold in reserve the $994,162.25 of funds that belong to Boost Web pending resolution of the Florida Action. [ECF No. 229-1].[3] The next day, on May 3, 2024, CardConnect filed a Notice of Compliance with the Court's electronic order (and paid out the reserved funds to Boost Web's counsel on May 7, 2024). [ECF No. 229]. Also on May 3, 2024, Mr. Orkin filed in the Florida Action an "Emergency Motion for Temporary Injunction" seeking to prevent Lisa Albert and Boost Web from using any funds

---

[3] In the alternative, Mr. Orkin's Florida counsel implored CardConnect to file an interpleader action in Case No. 24-CA-00340 and deposit the funds with the Florida court. *Id.*

received from CardConnect to repay herself or pay creditors, which motion had not yet been served and was first obtained from the Florida court's docket on May 9, 2024. [ECF No. 233-1].

On May 10, 2024, Lisa Albert and Boost Web moved for a TRO. [ECF No. 232]. After a hearing on May 13, 2024, the Court granted the motion and entered the TRO on May 14, 2024. [ECF Nos. 238 & 242]. Boost Web then moved to convert the TRO to a permanent injunction, which the Court took under advisement after a hearing on the motion on June 18, 2024. [ECF Nos. 250 & 260]. In the midst of adjudicating these motions for injunctive relief, the Court also held Mr. Orkin in contempt of court and issued sanctions against him for his repeated demands to CardConnect that it defy the Court's order to issue the residual funds to Boost Web and for his secretive initiation of the Florida Action to further prevent Boost Web and Lisa Albert from using any of the funds awarded to Boost Web by CardConnect. [ECF No. 262].

## ANALYSIS

A.  The Court May Enjoin Relitigation of Issues It Already Decided

Federal courts are authorized to protect and effectuate their judgments under the All-Writs Act.  *See* 28 U.S.C. § 1651 ("[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law").  "The statute empowers a federal court to enjoin a party before it from attempting to relitigate an issue in a state court, to 'prevent any interference' with the federal court's judgment."  *In re Ocean Ranger Sinking off Newfoundland on February 15, 1982*, 617 F. Supp. 435, 436 (E.D. La. 1985) ("An injunction is the appropriate sanction to preclude this 'judicial hopscotch'").  This equitable power is subject to the Anti–Injunction Act, which prohibits a federal court from "grant[ing] an injunction to stay proceedings in a State court except . . . where necessary . . . to protect or effectuate its judgments."  28 U.S.C. § 2283.  "The words 'protect or effectuate' in § 2283 are generally viewed as incorporating the principles of res judicata and collateral

estoppel, which come into play only when there is a final judgment or appealable order to be protected or effectuated." *Fernandez-Vargas v. Pfizer*, 522 F.3d 55, 68 (1st Cir. 2008) (affirming district court's decision to enjoin Commonwealth action under relitigation exception to Anti-Injunction Act) (quoting *James v. Bellotti,* 733 F.2d 989, 993–94 (1st Cir. 1984)); *see In re Ocean Ranger Sinking*, 617 F. Supp. at 439 (granting relitigation injunction); *BGW Associates, Inc. v. Valley Broadcasting Co.*, 532 F. Supp. 1115, 1118 (S.D.N.Y. 1982) (granting relitigation injunction).

As the First Circuit has explained:

> "[t]he relitigation exception provides that where a federal court has conclusively decided an issue, it *may* prevent the unsuccessful party from relitigating that same issue in state court.  Application of the exception (1) reinforces the preclusive effect of federal court judgments, (2) ensures the finality of federal court decisions, and (3) prevents harassment through repetitive state court proceedings of those litigants prevailing in federal court.  The relitigation exception applies where, because of preclusion principals, the state court should not hear a case but still may do so."

*Fernandez-Vargas*, 522 F.3d at 68 (citing Erwin Chemerinsky, *Federal Jurisdiction* § 11.2, at 751–52 (5th ed. 2007)).  The Supreme Court has held that the relitigation exception may apply to both claims <u>and</u> *issues* that have actually been decided by the federal court. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148 (1988).

Indeed, this Court has already decided the same issues that Mr. Orkin seeks to relitigate in his Florida action. For example, this Court extensively considered the very issue of "[w]ho has ownership and control of Boost Web, including the roles of both Wayne and Lisa, and their authority over Boost Web?" – which was submitted as a disputed issue in the parties' pretrial memorandum. [*See* ECF No. 160 "Disputed Factual Issues" ¶ 28].  This Court has already decided that Mr. Orkin is not an officer or shareholder of Boost Web and is not entitled to control Boost Web. [ECF No. 204 at (PFF ¶¶ 1-14); (IFF ¶¶ 7-16)].  In support of this finding, the Court analyzed the evidence as to Boost Web's formation, both Mr. Orkin's and Ms. Albert's functions performed

on behalf of Boost Web, as well as their ownership of Boost Web.  [*Id.* PFF ¶ 5 ("Lisa incorporated Boost Web in Florida in 2013"); PFF ¶ 6 ("Boost Web's Articles of Incorporation list Lisa Albert as the registered agent, incorporator, and sole 'initial officer(s) and/or director(s)'"); PFF ¶ 7 ("Florida Secretary of State reports for each year from 2018 to 2021 list Lisa Albert as the 'current registered agent' and 'officer/director,' and she signed those reports as 'P'"); PFF ¶ 8 ("There are no Shareholders of Boost Web.  No shares were ever issued for Boost Web.  Additionally, no president or officers were ever elected"); PFF ¶ 9 ("Wayne often held himself out publicly as the President of Boost Web, such as on his Boost Web email signature block, which states 'Wayne Orkin, President'"); IFF ¶ 7 ("Wayne ran all of the day-to-day business affairs of Boost Web"); IFF ¶ 8 ("Lisa assisted with annual tax filings and some banking matters, with direction from Wayne and Boost Web's accountants"); IFF ¶ 9 ("At Wayne's direction, Lisa sent checks out for Boost Web business, set up the Boost Web voicemail to go to Wayne, and set up a virtual office for Boost Web"); IFF ¶ 10 ("Wayne generated all of Boost Web's business")].  This Court's factual determination after trial as to the ownership and control of Boost Web precludes Mr. Orkin from relitigating the same issues elsewhere.  *Vargas v. Pfizer Pharms., Inc.*, No. 04–2236(JAF), 2006 WL 3254463, at *7-8 (D.P.R. Nov. 8, 2006), *aff'd sub nom. Fernandez-Vargas v. Pfizer*, 522 F.3d at 69 (determining issue being litigated in Puerto Rico state court was same issue already decided by federal court).

In opposition, Mr. Orkin argues that this Court did not decide the precise question of "the allocation of Boost Web assets between the founders of Boost Web based on ownership share . . ." [ECF No. 259 at 1-2].  In the Florida Action, however, Mr. Orkin seeks to relitigate this issue on almost identical allegations to what this Court found in the Amended Memorandum of Decision. *See* Florida Complaint at ¶ 12 ("Lisa Albert incorporated Boost Web for her brother, Wayne Orkin, in Florida in 2013"); ¶ 13 ("Boost Web's Articles of Incorporation list Lisa Albert as the registered

agent, incorporator, and sole 'initial officer(s) and/or director(s)'"); ¶ 14 ("Florida Secretary of State reports for each year from 2018 to the present list Lisa Albert has acted as registered agent and officer/director"); ¶ 15 ("There are no written, issued shares of stock"); ¶ 16 ("Additionally, no president or officers were ever elected [and] Wayne Orkin always held himself out publicly as the President of Boost Web, such as on his Boost Web email signature block, which states 'Wayne Orkin, President'"); ¶ 29 ("Wayne Orkin by himself alone, ran all of the day-to-day business affairs of Boost Web [and] was responsible for and created all revue[sic] that was deposited to the Boost Web's Wells Fargo Account"); ¶ 30 ("Lisa Albert assisted with annual tax filings and some banking matters, with direction from Wayne Orkin and Boost Web's accountants"); ¶ 31 ("At Wayne's direction, Lisa Albert sent checks out for Boost Web's business, set up the Boost Web voicemail to go to Wayne Orkin, and set up a virtual office for Boost Web")]. This Court has already decided that Wayne is not 100 percent owner of Boost Web and is not an officer of Boost Web, and therefore, has no right to control Boost Web.  [ECF No. 204 (Intervenor Conclusions of Law at 30-31, ¶ 27) ("Wayne Orkin indisputably ran Boost Web's day-to-day operations, generated all of its revenue, maintained relationships with merchants, and was viewed by others doing business with him as the face of Boost Web."); (IFF ¶¶ **7**-15) ("Lisa Albert incorporated Boost Web and listed no other officers or shareholders, opened the Boost Web Wells Fargo account, used her personal credit card (and put her own credit worthiness on the line) for Boost Web, and signed and filed all Boost Web tax returns."); (PFF ¶¶ 5-8, 11, 12) ("Wayne may have been the boots on the ground, but Lisa was the officer above accountable for all of the risk.")].

Moreover, even if Mr. Orkin had a claim of ownership of Boost Web that was not already decided against him by the Court, that claim is barred as arising under the same nucleus of operative facts. *See Salvati v. Fireman's Fund Ins. Co.*, 368 F. Supp. 3d 85, 91 (D. Mass. 2019) (discussing First Circuit standard for determining whether claims are sufficiently identical or

related to claims raised in a prior action). In this Court, Mr. Orkin could have sought a declaration

that he owned 100 percent of Boost Web in his original complaint or asserted it as a mandatory

counterclaim against Boost Web's conversion claim.  He did neither and may not split his claim to

assert an ownership interest in Boost Web by a separate action filed in another jurisdiction. *See*

*Salvati,* 368 F. Supp. 3d at 91-92 (analyzing claim splitting doctrine in diversity case).  *C.f. Kale*

*v. Combined Ins. Co. of America*, 924 F.2d 1161, 1165 (1st Cir. 1991) ("when a plaintiff pleads a

claim in federal court, he must, to avoid the onus of claim-splitting, bring all related state claims

in the same lawsuit"); *Meredith Mgmt. Corp. v. Waterman*, No. 09-ADMS-100352010, Mass. App.

Div. LEXIS 4, *7 (Mass. App. Ct. Nov. 20, 2009) (citation omitted) (the Massachusetts prohibition

on claim splitting "extinguishes all rights of a plaintiff to remedies against a defendant with respect

to all or any part of the transaction, or series of connected transactions, out of which the action

arose"); *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021) (no claim splitting

under Florida law).

That Mr. Orkin and this Court did not use the words "owns Boost Web" is not determinative

that the issue of ownership of Boost Web was not decided. As this Court explained in the TRO

order, the language quoted from the Amended Order above "necessarily implies [a] decision on

that question:" Lisa Albert owns Boost Web. *Cf. Atl. Coast Line R.R. Co. v. Bhd. of Locomotive*

*Eng'rs*, 398 U.S. 281, 290 (1970) (finding an issue was not determined by the federal court when,

"[n]ot only was that point never argued to the court, but there is no language in the order that

necessarily implies any decision on that question.").  The decision of this Court after trial is given

preclusive effect[4] and Mr. Orkin may not take another bite at the apple by reframing the claims he

lost as a declaratory judgment claim in Florida courts or anywhere else.

---

[4] "Based on concerns of comity and federalism," the Court has considered whether it would be
better to require the moving parties to raise a preclusion defense in state court. *See Fernandez-*

B.  <u>Boost Web and Ms. Albert Have Met Their Burden for Entry of a Permanent Injunction</u>

Having determined that the relitigation exception to the Anti-Injunction Act applies, to enjoin Mr. Orkin from prosecuting the Florida Action, the Court must next find that the prerequisites for injunctive relief are met. *Bellotti*, 733 F.2d at 993 (citing *Atl. Coast Line R.R. Co.*, 398 U.S. at 286-87).

The Court may, in its discretion, issue a permanent injunction if it concludes:

"(1) that [a party] has suffered"—or . . . will suffer—"an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, No. 21-10572-MRG, 2024 U.S. Dist. LEXIS 65395, at *71 (D. Mass. Apr. 10, 2024) (quoting *Glob. NAPs, Inc. v. Verizon New England, Inc.*, 706 F.3d 8, 13 (1st Cir. 2013). As the First Circuit has explained, "[t]he first two factors together require 'a substantial injury that is not accurately measurable or adequately compensable by money damages.'" *Id.* (citation omitted).

Boost Web is very likely to suffer irreparable harm in the absence of a permanent injunction. First, if the Florida state court were to grant the relief requested by Mr. Orkin, it would be utterly inconsistent with this Court's judgment. Irreparable harm may be established by "the risk of inconsistent judgments" – particularly where the proceedings will drain the moving party

---

*Vargas*, 522 F.3d at 68. However, as the First Circuit cautions, "the court must remain mindful that the state court's rejection of a preclusion defense effectively proscribes a federal court from issuing a subsequent injunction to effectuate its judgment." *Id.* (citing *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 524 (1986) ("holding the relitigation exception was limited 'to those situations in which the state court has not yet ruled on the merits of the res judicata issue'")). The Florida court has not yet ruled on the merits on any preclusion issue. *See Wayne Orkin individually and on behalf of Boost Web SEO, Inc. v. Lisa Albert and Boost Web SEO, Inc.* Case No. 24-CA-003401 (13th Judicial District, Hillsborough County).

of time and resources and result in incongruent results that cannot be undone. *See Gov't Emps. Ins. Co. v. Patel*, No. 23-CV-2835, 2024 U.S. Dist. LEXIS 3790, at *17-18 (E.D.N.Y. Jan. 8, 2024); *Steves and Sons, Inc. v. Jeld-Wen, Inc.*, No. 3:16-CV-545, 2019 WL 3860198, at *11 (E.D. Va. Aug. 16, 2019), *dismissed*, No. 19-1995, 2021 WL 9552997 (4th Cir. Nov. 9, 2021) ("[R]isk of inconsistent judgments . . . is also an irreparable injury"). Further, the emergency relief that Mr. Orkin now seeks in Florida would prevent Boost Web from paying its creditors, including counsel necessary to defend the Florida action.  [ECF No. 229-2 ¶ 47 (seeking injunctive relief to "preserve assets wherever located, and to carry on the business of Boost Web")].

Even if the very real risk of inconsistent judgments was not present and money damages were the only outcome at issue, irreparable harm may still be shown "where there is a strong indication that the defendant may dissipate or conceal assets." *S.E.C. v. Thibeault*, 80 F. Supp. 3d 288, 293 (D. Mass. 2015).[5] If Mr. Orkin prevails in obtaining an ownership share of Boost Web assets in his Florida Action, there is a strong indication that he may dissipate or conceal company assets that this Court has already determined are owned by Boost Web and Lisa Albert. Mr. Orkin has a record of defying court orders to pay judgments, including in this case, [*see* Appl. First Writ Execution, ECF No. 257], and evidence at trial suggested he has a history of hiding assets from

---

[5] *Thibeault* concerned the entering of an asset freeze in an SEC action. When considering whether to freeze assets, the Court must apply the same four-part test for issuing a preliminary injunction. *Thibeault*, 80 F. Supp. 3d at 293 (citing *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 161 (1st Cir. 2004)). The second factor of the preliminary injunction test is risk of irreparable harm, which is essentially the same as the first factor for a permanent injunction. *See KPM Analytics*, 2024 U.S. Dist. LEXIS 65395, at *71. As "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction," the Court finds that what constitutes irreparable harm for an asset freeze also suffices for irreparable harm under the permanent injunction standard. *See also SunLink Corp. v. Am. Capital Energy, Inc.*, No. 15-13606-ADB, 2017 U.S. Dist. LEXIS 2191, at *2 n.1 (D. Mass. Jan. 6, 2017) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

the Internal Revenue Service when it sought to collect tax liens (*See* Trial Tr. Day 3 99:21-103:3-8, ECF No. 181 (tax liens owed for 2008 through 2012)). Further, Boost Web's conversion case against Mr. Orkin demonstrated that he routinely concealed personal purchases as company expenses. [*See* Amended Decision, ECF No. 204]. As a result, the Court finds that Boost Web has met its burden on irreparable harm, even in this case where money damages are at issue.

In addition, the balance of hardships tips in Boost Web's favor. Mr. Orkin has appeal rights to seek to overturn the Court's decision. He has already appealed nearly every decision in this case, and he will likely appeal this very order. To the extent he is seeking determination of other claims regarding Boost Web ownership, those claims would be barred by claim preclusion, so his pursuit in the Florida Action would likely be futile. Additionally, Mr. Orkin made no showing of any injury caused by the Court's entry of the TRO. In comparison, Boost Web and Ms. Albert will be required to defend themselves in Florida court on the very issues they have litigated here for the past three years and may be subjected to inconsistent verdicts.

Finally, it is also in the public interest for the Court to issue this permanent injunction. First, the Florida Action is a waste of judicial resources as it relitigates issues this Court has already decided. Further, in bringing the action, Mr. Orkin is abusing the judicial system by harassing Boost Web and Ms. Albert with needless litigation. The public has an interest in the integrity of the court system, where litigants pursue their claims upon a truthful and nonfrivolous basis, without an improper purpose. Indeed, Federal Rule of Civil Procedure 11 reflects this ideal by requiring attorneys to vow to abide by these principles when presenting a filing to the court. *See* Fed. R. Civ. P. 11(b). Moreover, the integrity of the court system relies on respect for a court's judgments, which help resolve intractable problems and provide predictability and order to society and individual relationships. To allow Mr. Orkin to proceed with his litigation in Florida would undermine the integrity and finality of this Court's judgment and expose Boost Web and Ms.

Albert to renewed – and unwarranted – uncertainty, conflict, and expense. This permanent injunction furthers the public interest and serves the exact purposes of the relitigation exception: it "(1) reinforces the preclusive effect of federal court judgments, (2) ensures the finality of federal court decisions, and (3) prevents harassment through repetitive state court proceedings of those litigants prevailing in federal court." *Fernandez-Vargas*, 522 F.3d at 68.

## CONCLUSION

In light of the above, the Court **GRANTS** Boost Web's motion for a permanent injunction [ECF No. 250]. Intervenor-Defendant Wayne Orkin and anyone acting in concert with him are **hereby ENJOINED** from prosecuting any action, including the case of *Wayne Orkin individually and on behalf of Boost Web SEO, Inc. v. Lisa Albert and Boost Web SEO, Inc.* Case No. 24-CA-003401 (13th Judicial District, Hillsborough County), that relitigates the issue of ownership of Boost Web or any other issue that was decided by this Court in its Amended Memorandum of Decision, [ECF No. 204] and further explained in its decision on Non-Party CardConnect, LLC's Motion for Leave to Deposit Funds. [ECF No. 226]. Mr. Orkin is not enjoined from pursuing appropriate appellate review in the U.S. Court of Appeals for the First Circuit.

**SO ORDERED.**

Dated: July 8, 2024

       /s/ Margaret R. Guzman
       Margaret R. Guzman
       United States District Judge